Anna **KARLING**, Appellant,

v.

**LOWER COLORADO RIVER AUTHORITY**, Appellee.

No. 10480.

Court of Civil Appeals of Texas.

Austin.

May 15, 1957.

Rehearing Denied June 5, 1957.

————◆————

Dan Moody, Dan Moody, Jr., Austin, for appellant.

W. S. Gideon, Mac Umstattd, Austin, for appellee.

HUGHES, Justice.

The Reverend J. F. Karling was drowned on June 13, 1955, in the Colorado River below and near the Marble Falls Dam. He and a companion were fishing from a boat in those waters when flood gates on the dam were opened and the onrushing water caused the boat to capsize and Reverend Karling to drown.

This suit is brought by the widow, Mrs. Anna Karling, against the Lower Colorado River Authority for damages for negligently causing the death of her husband. The alleged acts of negligence were the opening of the flood gates under the then existing circumstances and the failure to timely warn persons fishing in the river just below the dam that the gates were to be opened.

The trial court sustained special exceptions by L.C.R.A.[1] to the pleadings of Mrs. Karling and upon her refusal to amend dismissed her suit.

We will summarize the exceptions. (1) That L.C.R.A. is a political subdivision of the State created, existing and operating solely and exclusively as a governmental agency in a purely governmental capacity and hence immune from tort liability. (2) That the acts of L.C.R.A. in the premises, opening flood gates and releasing impounded flood waters, were purely governmental and nonproprietary and hence nonactionable in any event.

We believe the first exception to be well taken and consideration of the second unnecessary.

Section 59 of Article XVI of the Constitution of the State of Texas, Vernon's Ann.St., pursuant to which the L.C.R.A. was organized, reads as follows:

"Sec. 59. (a) The conservation and development of all of the natural re-

1. These exceptions are recited in the judgment to be those contained in paragraphs II and III of defendant's answer to plaintiff's first amended original petition filed August 21, 1956. The only answer in the transcript was filed October 8, 1956, and we assume this is the pleading to which reference was made.

sources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

"(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

The L.C.R.A. was created by and exists under the provisions of the Lower Colorado River Authority Act (Chapter 7, p. 19, Acts of the 43rd Legislature, 4th Called Session, 1934, as amended; Article 8280-107, Vernon's Ann.Civ.St.).

We will quote only such portions of this Act as are pertinent here including all portions deemed of special importance by appellant:

"Sec. 1. There is hereby created within the State of Texas, in addition to the districts into which the State has heretofore been divided, a conservation and reclamation district to be known as 'Lower Colorado River Authority' (hereinafter called the District) and consisting of that part of the State of Texas which is included within the boundaries of the counties of Blanco, Burnet, Llano, Travis, Bastrop, Fayette, Colorado, Wharton, San Saba and Matagorda. Such District shall be and is hereby declared to be a governmental agency and body politic and corporate, with the powers of government and with the authority to exercise the rights, privileges and functions hereinafter specified, and the creation of such District is hereby determined to be essential to the accomplishment of the purposes of Section 59 of Article 16 of the Constitution of the State of Texas, including (to the extent hereinafter authorized) the control, storing, preservation and distribution of the waters of the Colorado River and its tributaries for irrigation, power and other useful purposes, the reclamation and irrigation of arid, semi-arid and other lands needing irrigation, and the conservation and development of the forests, water and hydro-electric power of the State of Texas. * * *

"Sec. 2. Except as expressly limited by this Act, the District shall have and is hereby authorized to exercise all powers, rights, privileges and functions conferred by General Law upon any District or Districts created pursuant to Section 59 of Article 16 of the Constitution of the State of Texas. Without limitation of the generality of the foregoing, the District shall have and is hereby authorized to exercise the following powers, rights, privileges and functions:

"(a) to control, store and preserve, within the boundaries of the District, the waters of the Colorado River and its tributaries for any useful purpose, and to use, distribute and sell the same,

within the boundaries of the District, for any such purpose;

"(b) to develop and generate water power and electric energy within the boundaries of the District and to distribute and sell water power and electric energy, within or without the boundaries of the District;

"(c) to prevent or aid in the prevention of damage to person or property from the waters of the Colorado River and its tributaries;

\*    \*    \*    \*    \*    \*

"(e) to acquire by purchase, lease, gift or in any other manner (otherwise than by condemnation) and to maintain, use and operate any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the District, necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act;

"(f) to acquire by condemnation any and all property of any kind, \*    \*    \* within or without the boundaries of the District \*    \*    \* necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act, \*    \*    \*

\*    \*    \*    \*    \*    \*

"(j) to sue and be sued in its corporate name;

"(k) to adopt, use and alter a corporate seal;

\*    \*    \*    \*    \*    \*

"(o) to borrow money for its corporate purposes \*    \*    \*

\*    \*    \*    \*    \*    \*

"Sec. 10. The District shall have the power \*    \*    \* (1) to build and construct dams within the District, on the Colorado River and its tributaries for the impounding and storage of flood and surface water; (2) to purchase and install in the dams on the Colorado River hydro-electric generators and other related facilities for the generation of hydro-electric power, and (3) for the construction of such additional lines and the purchase and installation of such additional equipment as the Board of Directors of the District may deem necessary or expedient to enable the District to continue to meet the demand for electric power in the area now served by its transmission lines and distribution system, \*    \*    \*

\*    \*    \*    \*    \*    \*

"Sec. 14–b. Nothing in Section 14 or elsewhere in the Lower Colorado River Authority Act shall prohibit or restrict the sale, lease or other disposition to any electric cooperative, municipality, or other governmental agency or body politic and corporate of the State of Texas of any property acquired or constructed by the District and incidental to or used or useful in the generation, production, transmission, distribution or sale of electric energy; and the Authority is authorized to pledge the proceeds of any such sale or sales to the same extent and in the same manner in which it is authorized to pledge its revenues.

"Sec. 15. The District shall not prevent free public use of its lands for recreation purposes and for hunting and fishing except at such points where, in the opinion of the Directors, such use would interfere with the proper conduct of the business.

"All public rights of way now traversing the areas to be flooded by the impounding waters shall remain open as a way of free public passage to and from the lakes created, and no charge shall ever be made to the public for the right to engage in hunting, fishing, boating or swimming thereon."

This Court, the late Associate · Justice Baugh · writing, held in Hodge v. Lower

Colorado River Authority, 163 S.W.2d 855, that appellee was a political subdivision of the State of the same nature and standing upon the same footing as counties and was immune from liability for torts of its agents and employees. A writ of error was granted by the Supreme Court which was later dismissed upon agreement of the parties. If this were the end of the history of this case we would, because of its authority being so weakened, re-examine it and the principles upon which it is based. The Supreme Court has, however, in Bennett v. Brown County Water Improvement District, 153 Tex. 599, 272 S.W.2d 498, 501, given carte blanche approval of Hodge by stating:

"For an enlightening discussion of the law applicable to causes such as the one at bar see the case of Hodge v. Lower Colorado River Authority, Tex. Civ.App., 1942, 163 S.W.2d 855, writ dismissed by agreement of the parties."

Bennett v. Brown County Water Improvement District was a suit for damages for the death of a small child drowned in an irrigation ditch owned and operated by the Water Improvement District as an incident to the storing and distribution of flood waters in Brown County. Liability was sought to be based on negligence of the District and the maintenance of a nuisance by it.

The Water District was created under the authority of Sec. 59a, Art. XVI, of our Constitution, quoted supra. Art. 7731, V.A. C.S., applicable to such districts provided, in part:

"All such districts shall be governmental agencies, and body politic and corporate, and be governed by and exercise all the rights, privileges and powers provided by law * * *."

In holding that the Water District was a "governmental agency and body politic, and governed by the law applicable to counties" and immune from tort liability in the absence of a statute imposing such liability the Court had this to say about appellee herein and the cases regarding it:

"The following cases thoroughly discuss the nature and characteristics of the Lower Colorado River Authority, which has been created under Article XVI, Section 59a, and hold that such Authority is a governmental agency, a body politic and possessed of the characteristics and nature as the State and its governmental subdivisions. Such cases also hold that the Authority does not lose its governmental character by virtue of the fact that it generates power and sells the power to individuals, the same as a private utility. Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629; Lower Colorado River Authority v. Chemical Bank & Trust Co., Tex.Civ.App., 185 S.W.2d 461, affirmed 144 Tex. 326, 190 S.W.2d 48. We can see no distinction in the rules of law to be applied to either a drainage district or the Lower Colorado River Authority, or to respondent herein. Each is created under the authority of Article XVI, Section 59, and the appropriate legislative enactments. The people of Texas, in adopting the Conservation Amendment, Article XVI, Section 59, have very plainly set forth that they decree these districts to be 'governmental agencies and bodies politic.' The representatives of the people assembled in the Legislature, in carrying into effect the constitutional amendment, have likewise so decreed. It is the duty of the courts to give effect to the will of the people as so plainly expressed."

There was a dissenting opinion in the above case by Associate Justice Wilson joined by Justices Calvert and Smith in which he stated:

"The Lower Colorado River cases are not in point on tort liability because, first, the building of the dams was done to prevent floods as well as sell power, and, second, because this

authority was created under a special act of the Legislature and not by consent of its 'inhabitants' if it can be said to have any."

The inference we perceive from this statement is that the dissenting justices found no fault with the L.C.R.A. cases.

Appellant stresses the statutory duty imposed upon L.C.R.A. to "prevent or aid in the prevention of damage to person or property from the waters of the Colorado River and its tributaries." We must assume that this language as well as all other provisions of the L.C.R.A. law were considered by the Supreme Court when it spoke in the Brown County case, supra. Furthermore such language while it may create a duty it does not purport to create liability for its infraction.

On oral presentation appellant cited us to State v. Elliott, Tex.Civ.App.Galveston 1919, 212 S.W. 695, writ ref.[2] That case sustained a recovery against the State for damages for personal injuries sustained by an employee of the State Railroad, a railroad owned and operated by the State. We need not review this case at length because it was before the Court in Brown County, supra, and because liability there was based primarily upon contractual relations between the State and the injured employee. No such relations are present here.

Finally the argument is made that liability of L.C.R.A. here may be predicated upon the following portion of Art. 4671, V.A.C.S.

"* * * An action for actual damages on account of injuries causing death of any person may be brought in the following cases:

"1. When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskilfulness, or default of another person, association of persons, joint stock company, corporation or trustee or receiver of any person, corporation, joint stock company, or association of persons, his, its or their agents or servants, such persons, association of persons, joint stock company, corporation, trustee or receiver, shall be liable in damages for the injuries causing such death. The term 'corporation,' as used in this article, shall include all municipal corporations, as well as all private and public and quasi public corporations, except counties and common and independent school districts."

Appellant contends that a corporate body such as L.C.R.A. falls within the purview of this statute.

Art. 4671 was last amended in 1921. We must and do assume that the Supreme Court considered all relevant statutes and authorities in deciding the cases above cited. A sufficient answer, it seems to us, to appellant's contention is that Art. 4672, V.A.C.S., provides that "The wrongful act, negligence, carelessness, unskilfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

In Dallas Ry. & Terminal Co. v. High, 129 Tex. 219, 103 S.W.2d 735, 736, the Court said:

"By the express provisions of article 4672, supra, the persons named in article 4675, supra, can not recover damages under article 4671, supra, for injuries resulting in death, unless the circumstances are such that if death had not ensued the person injured could have recovered."

Since, if we are correct, Reverend Karling could not have recovered damage for injuries if he had survived the capsizing of his boat his widow cannot recover damages for his death.

2. Refusal of a writ at this time did not constitute approval of the Court of Civil

Since the Brown County Water Improvement District, a "governmental agency(ies) and body politic and corporate" is governed by the law applicable to counties, we believe that L.C.R.A., "a governmental agency and body politic and corporate" is also governed by the law applicable to counties. Such law requires tort liability to be created by statute. There is no such statute and there is no liability.

The judgment of the Trial Court is affirmed.

Affirmed.

GRAY, Justice (dissenting).

I disagree with the majority opinion for the reason that I do not think it decides the question presented.

This is not a suit for damages founded on liability for tort in a true sense but it is a suit for damages for the violation of a statutory duty. The material portions of the Act creating the Lower Colorado River Authority are set out in the original opinion with a full quotation of Sec. 15 of the Act. It is my opinion that a violation of this section is alleged.

Appellant alleged the substance of Section 15 and that:

"About 1:15 on the morning of said day the employees of defendant charged with the operation of the Marble Falls Dam, without any warning to J. F. Karling or his companion, caused the flood gates on said dam to be opened and to discharge vast quantities of water into the Colorado River below said dam. At the time said flood gates were opened said J. F. Karling and his companion were fishing in the Colorado River approximately two or three hundred feet below the dam. When the flood gates were opened and the impounded waters discharged into the Colorado River the boat from which J. F. Karling and his companion were fishing was capsized and the said J. F. Karling was thrown into the river and was drowned in the flood of waters that came upon him from the opening of the flood gates. The act of the employees of defendant in opening said gates under the circumstances then and there existing and the failure of said employees to warn the persons fishing in the river immediately below the dam in time for them to reach a place of safety was gross and wanton negligence, and the direct and proximate cause of J. F. Karling losing his life."

Appellee's exceptions are summarized in the original opinion, the first exception is sustained and the cause is disposed of on the general question that the Authority is immune from tort liability—this being the question presented by the exception. There were no special exceptions complaining of the absence of definite allegations in the pleadings and the pleadings are to be given such construction as will do substantial justice in the case. Rule 45, Texas Rules of Civil Procedure.

The rule of law applicable to the pleadings here, in my opinion, is stated in 1 C.J.S. Actions § 9 b, pp. 990, 991:

"The violation of a statutory duty, imposed for the benefit of the general public, becomes an actionable default, even without any element of ordinary negligence being present, and a right of action for the breach exists for injury to property rights, as well as for injury to the person."

The Bennett case relied on by the majority is authority for their holding that the Authority is immune from tort liability but it makes no reference to liability for the violation of a statutory duty and does not decide the question that I think is presented here.

I see no need to further state my views except to say that the trial court erred in sustaining each of appellee's special exceptions. Accordingly I would reverse the judgment of the trial court and remand the cause.

On Appellant's Motion for Rehearing

HUGHES, Justice.

Appellant contends that under the statutes set out in our original opinion, particularly subsection (c), Sec. 2, art. 8280–107, that there was a statutory duty on appellee to give warning that the flood gates were to be opened and that for a violation of this duty an action will lie on behalf of those for whom the statute was intended to protect. 1 C.J.S. Actions § 9 b, p. 991; 1 Am.Jur., p. 420, and other authorities are cited in support of this contention.

We agree with appellant's position and with the law stated in the cited authorities.

We simply believe, and so held, that appellee is immune from liability for breach of either a statutory or common-law duty.

The motion is overruled.

Motion overruled.