**GREAT ATLANTIC AND PACIFIC TEA COMPANY, a corporation, Appellant,**

v.

**Sherman LETHCOE, Appellee.**

No. 8074.

United States Court of Appeals
Fourth Circuit.

Argued May 27, 1960.

Decided June 29, 1960.

L. R. Coulling, Jr., Bluefield, W. Va., for appellant.

Billy E. Burkett, Princeton, W. Va. (Walter G. Burton, Princeton, W. Va., on the brief), for appellee.

Before HAYNSWORTH, Circuit Judge, and BARKSDALE and DALTON, District Judges.

DALTON, District Judge.

In this case the Great Atlantic & Pacific Tea Company appeals from a judgment of the District Court for the Southern District of West Virginia rendered on a jury verdict which awarded Sherman Lethcoe $1,000 compensatory damages and $2,000 punitive damages on account of two incidents of alleged false arrest and false imprisonment and one incident of alleged slander.

The first wrong complained of occurred at the Bluefield, West Virginia supermarket of appellant on November 18, 1957, and, according to Lethcoe, he was detained by Mr. Dye, the manager of the store, as he, Lethcoe, had left the premises where he had purchased some groceries. Lethcoe's evidence is that the store manager "come out hollering, 'Hey there, Shorty' ", demanded to know what Lethcoe had in his pocket, and took hold of the pocket which contained a bulky camera belonging to a Mrs. Bright which Dye suspected as stolen groceries, and was asked by Mr. Dye, "Did you pay for that stuff you have got in your poke?"; that the store manager, "acting on a hunch" (according to his testimony), took the poke and checked its contents and the check-out slip, and found that Lethcoe had in fact paid for his groceries at the check-out counter.

Some 9 days later—on November 27— Lethcoe, after the purchase of more groceries and after leaving the store for some 100 to 150 yards, was again accosted by the store manager who demanded to know what Lethcoe had in the poke, laid his hand on Lethcoe's shoulder, took the poke out of his arms, and examined its contents, and found that Lethcoe had again paid for his purchases.

The third complaint is a sequel to the incident of November 27—the allegation

being that the store manager said in the presence of others in reference to Lethcoe, "Well the s-o-b will never come in my store again."

Appellant contends that there is no substantial evidence of false arrest, false imprisonment or slander; that the verdict is excessive and that the finding of punitive damages is not justified under the law and evidence.

■■ Considering the case, as is our duty to do, in the light most favorable to the plaintiff, and bearing in mind that any restraint of one's personal liberty may constitute false imprisonment, it is our view there was sufficient evidence upon which the jury's verdict of $1,000 compensatory damages could be based. Perhaps, if we were to consider only the incident of November 18—it standing alone might be insufficient to justify a verdict, and appellant, sensing this point, urges that this part should have been eliminated from the jury's consideration. However, we feel that it was not prejudicial for the jury to consider it because at least it furnished a background which might be considered by the jury in determining the attitude and relationship of the parties, and to show whether or not there was an intentional invasion of plaintiff's rights by the store manager.

■ The alleged incidents of November 27, viewed from plaintiff's version, are sufficient to uphold the jury award of $1,000 as compensatory damages. We do not agree with defendant's contention that $1,000 as compensatory damages is excessive. It could be just as easily argued that even a hundred dollars would be too much. There is no showing of bias or prejudice, and if we are to uphold our jury system, the courts should not disturb jury verdicts rendered upon proper evidence and proper instructions, unless there is present a showing of improper motive or prejudice.

■ The difficulty in this case comes on the consideration of the award of $2,000 punitive damages. Bear in mind that this suit is only against the employer. Our view is that the Great Atlantic & Pacific Tea Company should not be required to pay punitive damages unless there was a showing of authorization or ratification by the principal of the alleged wrongs. This statement of law of West Virginia, which governs us here, is accepted by both the parties, and there is tacit admission by plaintiff's counsel that there was no authorization, and, therefore, retention of Dye in the employment of defendant is the only evidence of ratification. This, according to the decisions, is not enough.

In the case of Southern Ry. Co. v. Grubbs, 115 Va. 876, 80 S.E. 749, 751 (1914) there appears a discussion of this point, which reads:

"The plaintiff relies upon the failure of the defendant company to discharge the conductor, before trial, as a ratification of the conductor's alleged wrongful act. This position is not tenable.

"As said in Toledo R. Co. v. Gordon, 143 Fed. 95, 74 C.C.A. 289: 'It would indeed be a harsh rule— harsh in its effect on all employés— that would hold a railroad company to have ratified the employé's act merely because before trial the employé was not discharged. Such a rule would put their continued employment in jeopardy every time an accident occurred, not because the employé was shown to have been guilty of wanton conduct, but because the railway company stood in danger that wantoness might be established.'"

A Fourth Circuit opinion written by Judge Parker, Pullman Co. v. Hall, 46 F. 2d 399, 405, states the law as follows:

"Ratification involves the adoption of the act of the servant with knowledge of the facts; and mere retention of the servant in the service of the master does not necessarily amount to ratification, although in some cases it may be a circumstance to be considered by the jury, with the other evidence in the case, as bearing upon that question. Nor-

-folk & Portsmouth Traction Co. v. Miller, supra; Toledo, St. L. & W. R. Co. v. Gordon (C.C.A.7th) 143 F. 95; Dillingham v. Russell, 73 Tex. 47, 11 S.W. 139, 3 L.R.A. 634, 15 Am.St.Rep. 753, 762. Under the circumstances of this case, retention of the employee in the service of defendant not only did not of itself establish a ratification by the defendant of his improper conduct, but we do not think that that circumstance taken with the other evidence in the case would have warranted a finding that there was such ratification."

We can visualize instances wherein circumstances of retention of a servant, knowing of his incompetence, might warrant responsibility of a punitive nature on the part of the employer, but the case at bar does not present circumstances that would warrant exemplary damages.

Therefore, we affirm the judgment of the District Court as to actual damages, but deny plaintiff's right to the recovery of punitive damages, and the case will be remanded to the District Court for entry of judgment for actual damages only.

Affirmed in part and reversed in part.