Chester R. MORRIS, Appellant,

v.

UNIVERSITY OF TEXAS et al., Appellees.

No. 10883.

Court of Civil Appeals of Texas.

Austin.

July 19, 1961.

Rehearing Denied Aug. 14, 1961.

Chester R. Morris, pro se.

Will Wilson, Atty. Gen., Lawrence Hargrove, Asst. Atty. Gen., Taylor & Tyler, Austin, for appellees.

HUGHES, Justice.

This appeal is from a summary judgment entered December 29, 1960, denying appellant, Chester R. Morris, any relief in his suit against the University of Texas, the State of Texas, Paul White, Arno Nowotny and Carl Bredt.[1]

A motion to dismiss this appeal for want of jurisdiction was filed on behalf of all appellees, and overruled. We will now briefly state our reasons for this action.

Appellant's affidavit in lieu of bond for costs on appeal was filed February 2, 1961. Appellees' motion is based on Rule 356, Texas Rules of Civil Procedure, which provides, in part, that such an affidavit must be filed not more than twenty days after rendition of judgment or order overruling motion for new trial.

As stated, the judgment was entered December 29, 1960. Appellant filed a motion for new trial December 30, 1960. Endorsed on this original motion, at the end,

---

1. The take nothing judgment also runs in favor of Anthony Rousos although he was not named as a party defendant in the last petition filed by appellant. In addition, appellant filed a motion to nonsuit as to Dr. Rousos.

in handwriting, is the following order of the same date:

"On this 30th day of December, 1960, the plaintiff's motion for new trial filed on December 30, 1960, is in all things overruled, to which plaintiffs' exception is noted.

"s/ J. Harris Gardner
"Judge Presiding."

On January 27, 1961, the following order was entered in this cause:

"It is ordered that the Motion for a New Trial filed by plaintiff in the above cause be set for hearing on the 27th day of January, 1961, at 9 a. m.

"Dated, signed and entered this 16th day of January, 1961.

s/ Herman Jones
"District Judge." [2]

On January 27, 1961, appellant filed a motion, sworn to on the day before, to set aside the order of December 30, 1960, overruling his motion for a new trial. Such motion, of January 27, fully averred that appellant did not appear before the Court with respect to his motion for new trial on December 30, 1960, and denied any notice or knowledge of hearing thereon, and averred that the first knowledge of the order overruling the motion was obtained by him on January 16, 1961.

These averments were not denied or refuted by appellees, and we accept them as true.

This motion of appellant's was overruled by the Court on January 27, 1961, by the following order:

"On this 27th day of January, 1961 came on to be heard the Motion of Plaintiff Chester R. Morris, styled 'Motion to Set Aside Purported Final Judgment', to set aside the Court's Order of

December 30, 1960 entered by The Honorable J. Harris Gardner, Judge, which Order overruled Plaintiff's Motion for New Trial. It appearing to the Court that such Order is entirely regular on its face, it is accordingly

"Ordered that Plaintiff's Motion to set aside said Order is in all things overruled and that the Court's Order of January 16, 1961, setting a date for hearing on Plaintiff's Motion for New Trial, is hereby set aside and held for naught, such Motion for New Trial having been overruled before Plaintiff's request for hearing on such Motion was presented to the Court."

It is our opinion that the order of December 30, 1960, overruling appellant's Motion for New Trial was and is null and void.

Rule 329b,[3] Sec. 4, provides, in part, that "It shall be the duty of the proponent of an original or amended motion for new trial to present the same to the court within thirty (30) days after the same is filed."

The same section of the rule also provides that:

"In the event an original motion or amended motion for new trial be not presented within thirty (30) days after the date of the filing thereof, and the district judge in his discretion refuses to consider the same or refuses to hear evidence relating thereto, such motion will be overruled by operation of law forty-five (45) days after the same is filed, unless disposed of by an order rendered on or before said date."

Since this rule makes it the duty of the one filing a motion for new trial to "present the same to the court," such rule, of necessity, carries with it the correlative right of an opportunity to perform such duty.

■ We do not hold that a court could not, under any circumstances, require pres-

---

2. Judge Herman Jones succeeded Judge J. Harris Gardner, January 1, 1961.

3. For our purposes here, this rule is not affected by the amendment effective January 1, 1961.

entation of a motion for new trial without waiting for movant to present the same within the time allowed by the rule. We do hold that a court cannot arbitrarily deprive a movant of a fair opportunity to present his motion. The facts here show appellant was given no opportunity to present his motion before the court overruled it. This action was arbitrary and void.

■ In our opinion, appellant's motion for a new trial, not having been presented, was overruled by operation of law forty five days after its filing on December 30, 1960. Rule 329b, Sec. 4, supra.

It follows that appellant's affidavit in lieu of an appeal bond was timely filed. Rules 356, 306c, T.R.C.P.; Blocher v. McArthur, Tex.Civ.App., Austin, 303 S.W.2d 529, writ ref., N.R.E.; 3 Tex.Jur.2d p. 571.

In Morris v. Nowotny, Tex.Civ.App., 323 S.W.2d 301, N.R.E., certiorari denied 361 U.S. 889, 80 S.Ct. 164, 4 L.Ed.2d 124, we dismissed, without prejudice, a suit brought by appellant against appellees Nowotny, Bredt and White (also Dr. Rousos). The reason for our dismissal was that the pleadings of appellant did not adequately allege that any of appellees, who were University of Texas officials, intentionally committed an unlawful act injurious to appellant.

This suit, involving the same basic incidents, is, no doubt, brought by appellant with our former opinion in mind, and with an attempt to meet the deficiencies in pleadings therein noted.

Additionally this suit is against the State of Texas and the University of Texas, the authority for which is contained in H.C.R. No. 21, Reg.Sess. 56th Leg. p. 1167 (1959).

■■ We are not here, as in the former suit, bound by the pleadings, because, this being an appeal from a summary judgment, if the record discloses facts which make a summary judgment improper, it should be denied regardless of defects in the pleadings of the adverse party. Wo-

mack v. Allstate Ins. Co., 156 Tex. 467, 296 S.W.2d 233.

Appellees' motion for summary judgment was based on the ground that appellant had made no showing of any legal wrong committed against him by appellees, particularly that none of them libeled, falsely imprisoned, or deprived him of his liberty without due process of law. Appellees also stated in their motion that all acts done by them in connection with appellant's confinement were done by them pursuant to what they believed were their duties as officials of the University of Texas, and that such confinement was authorized by law.

This motion was supported by affidavits of Dr. Paul White and Judge Tom E. Johnson.

We quote the pertinent portion of the affidavit of Judge Johnson, who was County Judge of Travis County when the proceedings relative to the confinement of appellant occurred:

"On the first day of February, 1956, on the Information of one L. C. Stromquist that one Chester R. Morris was believed to be mentally ill and that the welfare of Chester R. Morris and of others required that he be placed in a state hospital for the mentally ill for observation and/or treatment for a period not exceeding ninety days, a proceeding entitled 'The State of Texas vs. Chester R. Morris, No. 1801' came on to be heard before the County Court of Travis County. In said proceeding, a certified copy of the record of which is attached hereto as Exhibit 'B', two reputable physicians who had confronted the said Chester R. Morris on the aforementioned day, to-wit: Anthony P. Rousos, M.D. and Paul White, M.D., swore that they were licensed physicians authorized by law to practice medicine in the State of Texas, that they were not on the staff of any Texas State Hospital, that within the preced-

ing five days of the hearing in said proceeding they had examined Chester R. Morris, that in their professional opinion Chester R. Morris was neither feeble minded, an idiot, an imbecile, nor an epileptic, and was mentally ill, and that in their opinion the welfare of Chester R. Morris and of others required that he should be temporarily committed for ninety days' observation and treatment in some hospital authorized by law to care for and treat mentally ill persons, as provided by law. Upon such sworn statements it was duly determined that Chester R. Morris was not charged with a criminal offense, was neither feebleminded, an idiot, an imbecile, nor an epileptic, and was mentally ill, and that the welfare of Chester R. Morris and of others required that he should be temporarily committed for observation and treatment to a mental hospital, as provided by law, for a period not to exceed ninety days. Chester R. Morris was accordingly temporarily committed to Austin State Hospital for a period of not to exceed ninety days, for observation and treatment."

We also copy the pertinent portion of the affidavit of Dr. Paul White:

"On the first day of February, 1956, in connection with a proceeding in the County Court of Travis County, Texas entitled 'The State of Texas vs. Chester R. Morris, No. 1801'. I swore to and subscribed a statement, entitled 'Testimony—Mental Illness', a copy of which is attached hereto as Exhibit 'A', that I was a licensed physician authorized by law to practice medicine in the State of Texas; that I was not on the staff of any Texas State Hospital; that within the preceding five days of the hearing in said proceeding I had examined Chester R. Morris who was alleged to be mentally ill; that in my professional opinion Chester R. Morris was neither feebleminded, an idiot, an imbecile, nor an epileptic, and was

mentally ill, and that in my opinion the welfare of Chester R. Morris and others required that he should be temporarily committed for 90 days observation and treatment in some hospital authorized by law to care for and treat mentally ill persons, as provided by law. I swore to and subscribed no other statements in connection with said proceedings. The same statement was sworn to and subscribed by Anthony P. Rousos on the aforementioned day and in connection with the aforementioned proceeding."

We quote from appellant's sworn reply to appellees' motion for summary judgment:

"In Answer to the allegation in paragraph II of Defendants' Amended Motion for Summary Judgment 'such detention and confinement of plaintiff were effected pursuant to the laws of this State (and in particular Article 3193o–1, Vernon's Civil Statutes)', said Article 3193o–1 provides in part 'and shall give notice to such person of the time and place of such hearing.' The plaintiff was served with no notice of hearing. According to the commitment order the plaintiff was neither served with process, nor did he waive service by making an appearance. Said Article 3193o–1 further provides 'If upon hearing of such matter' and the plaintiff was not heard. The plaintiff had no opportunity to say a word in his defense. If the doctors testified or stated 'that in each of their professional opinions' the plaintiff was mentally ill, the plaintiff was neither present nor was he represented by counsel.

\* \* \* \* \* \*

"The evidence that was sought by the plaintiff in the records at the University of Texas by the Motion for a Bill of Discovery and the evidence that was sought by the plaintiff in the records at Austin State Hospital by cause no. 118818 should be before the court before a decision is rendered."

We quote also from appellant's affidavit filed in opposition to the motion for summary judgment:

"The plaintiff is 52 years of age and was born March 26, 1908. The plaintiff is and has been continuously since his twenty-first birthday on March 26, 1929 a person of sound mind. In particular the plaintiff was a person of sound mind on February 1, 1956.

"III

"The plaintiff was not a witness to any of the following allegations in the 'Affidavit of Judge Tom E. Johnson in Support of Defendants' Amended Motion for Summary Judgment'.

" 'Anthony P. Rousos, M.D. and Paul White, M.D., swore that they were licensed physicians authorized by law to practice law in the State of Texas, that they were not on the staff of any Texas State Hospital, that within the preceding five days of the hearing in said proceeding they had examined Chester R. Morris that in their professional opinion Chester R. Morris was neither feeble-minded, an idiot, an imbicile, nor an epileptic, and was mentally ill, and that in their opinion the welfare of Chester R. Morris and of others required that he should be temporarily committed for ninety days' observation and treatment in some hospital authorized by law to care for and treat mentally ill persons, as provided by law.'

If any of said events described above from said affidavit of Judge Johnson occurred, the plaintiff was neither present, nor was he represented by counsel. The plaintiff was present at no part of said alleged events, nor was he represented by counsel.

"IV

"The plaintiff was neither present nor was he represented by counsel when any oaths were administered on February 1, 1956. The plaintiff was neither present nor was he represented by counsel when any statements were made under oath on February 1, 1956.

"V

"Neither Dr. Anthony P. Rousos nor Dr. Paul White made any comment concerning the mental condition of plaintiff within the hearing distance of plaintiff on February 1, 1956.

"VI

"The plaintiff had no opportunity to ask either Dr. Paul White or Dr. Anthony P. Rousos any questions for any part of the proceedings for cause no. 1801, either in person or by and through counsel. The plaintiff had no opportunity to request information from either Dr. Anthony P. Rousos or Dr. Paul White for any part of the proceedings for cause no. 1801. The plaintiff had no opportunity to ask any witnesses any question for any part of the proceedings for cause no. 1801. Neither Judge Johnson nor anyone in his presence extended to the plaintiff any invitation to ask anyone questions or request information from anyone prior to March 16, 1956.

"VII

"The officers executing the warrant of arrest in defendants' exhibit B, transferred the plaintiff from the jail at the police station to the jail at the court house. Said officers gave the plaintiff no information concerning any charges against him. Said officers did not inform the plaintiff he was being charged with lunacy or charged with being mentally ill. The plaintiff was kept ignorant of the charges until the announcement of alleged judgment by Judge Johnson at the jail. The plaintiff inquired of guards at the police station and at the court house jail concerning the charges against him. The only information that the

plaintiff received as a result of said inquiries to guards, was that a guard at the police station told the plaintiff he was being held under a suspicious persons act.

\*   \*   \*   \*   \*   \*

"IX

"The plaintiff was not permitted outside his jail cell on February 1, 1956. The door to the plaintiff jail cell was not unlocked on February 1, 1956.

"X

"Neither Judge Johnson, nor anyone in his presence extended to the plaintiff any invitation to say a word in his defense prior to March 16, 1956. The plaintiff did not have the opportunity to say a word in his defense for the proceedings for cause no. 1801.

"XI

"The plaintiff was served with no notice of hearing in cause no. 1801.

\*   \*   \*   \*   \*   \*

"XIII

"The welfare of the plaintiff on February 1, 1956, did not require that he be confined in a mental institution or any other place. The welfare of no other person on February 1, 1956 required that the plaintiff be confined in a mental institution nor any other place. The confinement of the plaintiff at Austin State Hospital did not contribute to the plaintiff's welfare in any respect. On the contrary the plaintiff was damaged by the confinement at Austin State Hospital. The confinement of the plaintiff at Austin State Hospital contributed to the welfare of no other person. The plaintiff has been damaged to the extent he is unable to make a living.

"The condition of the plaintiff was in no way improved when dismissed from Austin State Hospital on March 15, 1956, as compared to the condition of plaintiff at any time during the sixty day period immediately preceding 9:00 AM January 31, 1956.

"The plaintiff has been unemployed since September 29, 1955. Since November 16, 1955 the plaintiff has contacted more than 700 employers, many of them two or more times. The plaintiff has received offers but the offers have been withdrawn and a teaching contract revoked.

"XIV

"Except for the confinement of plaintiff at Austin State Hospital the plaintiff would be able to earn a comfortable salary. The confinement of plaintiff at Austin State Hospital was the reason given by Detroit Institute of Technology, Detroit, Michigan for breaking a teaching contract and firing the plaintiff before he started to work after the plaintiff was appointed as Associate Professor of Mathematics at $5800 per year for the academic year 1956–1957. Except for the confinement of plaintiff at Austin State Hospital, the plaintiff would be able to earn a comfortable salary. Except for the acts of university officials mentioned in the Plaintiff's First Amended Original Petition, the plaintiff would be able to earn a comfortable salary. Prior to the acts of university officials mentioned in the Plaintiff's First Amended Original Petition, the plaintiff would be able to earn his living.

\*   \*   \*   \*   \*   \*

" XX

"The plaintiff was last enrolled as a student at the University of Texas for the second semester 1955 which terminated approximately June 1, 1955. The plaintiff had no contact with Arno Nowotny, Carl Bredt or Anthony P. Rousos before August 1955. The plain-

tiff had no contact with Paul White before January 1956.

## " XXI

"Dr. Anthony P. Rousos stated in answer to interrogatory no. 5 in 'Defendant's Answers to Plaintiff's Interrogatories' filed in cause no. 4412 in the United States District Court for the District of New Mexico that he was employed as a consultant to the staff of Austin State Hospital from September 1955 through March 1959. Dr. Rousos presided over a staff meeting at Austin State Hospital on March 1, 1956.

## " XXII

"The only time the plaintiff saw Anthony P. Rousos after September 15, 1955 and before he was admitted to Austin State Hospital was at the jail visit of Arno Nowotny, Anthony P. Rousos, Paul White and Tom E. Johnson. The only thing that Dr. Rousos said at the jail visit was when Dr. White says 'Do you know who that is?', pointing to Dr. Rousos. The plaintiff says 'Dr. Rousos'. Dr. Rousos nodded his head that was correct. After announceing his alleged judgment and just before departing, Judge Johnson says 'You gentlemen think he should be sent to Austin State Hospital for observation'. Dr. Rousas and Dr. White both shook their heads, 'Oh yes'."

In an affidavit attached to appellees' motion for summary judgment, and on which appellant's commitment was based, Dr. Rousos swore that he was not on the staff of any Texas State Hospital.[4]

Regarding appellee Arno Nowotny, Dean of Student Life at the University of Texas and Carl Bredt, Associate Dean of Student Life at the University, there is no supporting affidavit in behalf of their motion for summary judgment. We are thus relegated to the allegations of appellant's petition to determine if a cause of action has been stated against these appellees.

The allegations regarding these appellees are of the same general character as those considered by us in the former appeal. We quote, however, the following from appellant's pleading in this case, which appears to be new, or at least different from his former pleading:

"Responsibility of defendant Arno Nowotny for the confinement and methods by which the plaintiff was confined, was established by Nowotny's failure to caution the judge, plaintiff was being confined by illegal proceedings, his failure to advise Doctors Rousos and White, they should refrain from signing the affidavit in Travis County Court Records for cause no. 1801 until the plaintiff was given a proper trial and by his conspiracy with other responsible parties.

\* \* \* \* \* \*

## " XLI

"The plaintiff was first called to the office of the Dean of Student Life in the latter part of August 1955. The plaintiff received a letter from Lockheed Aircraft Corporation, Burbank California dated September 1, 1955 offering him a position as Associate Engineer at $110 per week. It appears that this letter was too soon after the trouble with the Dean for his company to discover this trouble. The plaintiff worked for this company from September 19, 1955 to September 29, 1955. It appears that this company learned of the trouble with the dean after the plaintiff started to work. While no one at Lockheed Aircraft Corporation mentioned the trouble with the dean to the plaintiff, they investigate everyone they employ and it appears they would

4. See Art. 3193o–1, Vernon's R.C.S., since repealed, prohibiting testimony by member of Staff of Texas State Hospital in proceedings thereunder.

have no trouble learning about the trouble with the dean. The plaintiff had no trouble with anyone in the department where he worked. The plaintiff committed no act on the job such that any employer as he has known employers in the past would fire anyone for. As the trouble with the dean was explained to the plaintiff, Lockheed Aircraft Corporation would not have fired the plaintiff for it. But the trouble was explained to others differently. This trouble with the dean was illegal trouble for the following reasons:

"1. Defendants failed to advise the plaintiff accurately concerning the nature of their complaint.

"2. Defendants failed to advise the plaintiff accurately concerning complaints made against the plaintiff in their offices.

"3. Defendants failed to properly check the stories of persons making complaints against the plaintiff in their offices to see if the persons were telling the truth.

"4. Defendants failed to check their records properly to see if the material in the records was the truth.

"5. The records of defendants concerning this trouble contain false information.

"6. The plaintiff was not enrolled as a student at the time of this trouble. The plaintiff had no trouble or contact with the dean at any time while he was enrolled as a student at the University of Texas. The plaintiff was last enrolled as a student for the second semester 1955 which terminated approximately June 1, 1955 more than two months before any trouble with the dean.

"7. University officials including defendant Arno Nowotny corresponded with plaintiff's relatives but failed to supply the plaintiff with any copy of said correspondence. Said correspondence contained false information. Long after the plaintiff was dismissed from Austin State Hospital, relatives gave plaintiff a vague description of said correspondence, how accurate the plaintiff does not know. The plaintiff was never permitted to see any of said correspondence."

■ Of course Dean Nowotny was under no duty to advise the County Judge or anyone else on matters of law.

■ Appellant's pleading as to appellees Nowotny and Bredt, in our opinion, are still subject to the objections stated in our previous opinion to be applicable to the pleading there considered. The pleadings here, strictly construed so as to achieve substantial justice, do not adequately allege that these appellees have intentionally committed an unlawful act injurious to appellant. For a more complete statement of our views on this phase of the case, we refer to our previous opinion.

■ We are convinced that the affidavit of Dr. Paul White considered with the record in the County Court proceedings, and giving full effect to the pleadings and affidavit of appellant, leaves no issue of fact concerning the personal liability of Dr. White.

Giving full weight to appellant's self appraisal of his own mental fitness, this is not the issue. The question is not whether appellant was mentally ill when he was committed to the hospital. The question is whether or not Dr. White intentionally falsified an opinion that appellant was mentally ill. There is an absence of controverting matter to create a fact issue on this question. It will be noted that appellant's complaints regarding the County Court proceedings are principally directed to their alleged irregularity. Dr. White was in no way responsible for the manner in which these proceedings were conducted.

We are also of the opinion that appellant's pleadings are insufficient to state a cause of action against Dr. White under the rules stated in our former opinion.

Appellant having procured consent to sue the State and the University of Texas, we must determine the question of their liability.

 Appellant's suit is not based on contract, nor is it based upon a statute creating liability of the State or the University. It follows, that his suit must fall within the general classification of an action based on tort. The State and the University, being an agency of the State, have no tort liability for acts of their agents or employees unless such liability has been created by statute or the Constitution. State v. McDonald, Tex.Civ.App., Texarkana, 220 S.W.2d 732, writ ref.

Appellant relies upon a statement taken from 38 Tex.Jur. p. 657, that the State "may become liable for a wrong committed by its officer or agent in doing the very things prescribed by the law under which he acted." The only case cited in support of this statement is State v. Elliott, Tex.Civ.App., Galveston, 212 S.W. 695, writ ref. We distinguished this case, noting that when decided refusal of a writ of error did not constitute approval of the opinion, in Karling v. Lower Colorado River Authority, Tex.Civ.App., 303 S.W.2d 495, writ ref., N. R. E., on the ground that liability there was primarily based on contractual relations between the State and the injured employee.

The only remaining question to be decided is whether or not the court below erred in refusing to recognize appellant's nonsuit as to Dr. Anthony Rousos.

 The privilege of taking a nonsuit is expressly authorized by Rule 164, T.R.C.P. The right accorded by this rule is "absolute." Renfroe v. Johnson, 142 Tex. 251, 177 S.W.2d 600.

We reform the judgment by eliminating Dr. Anthony Rousos therefrom since he is not a party to this suit. As reformed, the judgment of the Trial Court is affirmed.

Reformed and as Reformed

Affirmed.