MYRIAM S. DOBBINS, Plaintiff and Appellant, *v.* HATO REY PSYCHIATRIC HOSPITAL, INC., and THE COMMONWEALTH OF PUERTO RICO, Defendants and the latter Appellee.

No. 404.   Decided December 27, 1962.

*Carlos Carrera Benítez* for appellant.   *J. B. Fernández Badillo, Solicitor General, Jorge Segarra Olivero,* and *Arturo Estrella, Assistant Solicitors General,* for appellee, Commonwealth of Puerto Rico.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, pro-tempore, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Appellant Myriam S. Dobbins filed an action for damages against the Commonwealth of Puerto Rico, the corporation Hato Rey Psychiatric Hospital, Inc.—also known as Clínica Juliá—and Dr. José Alberto Salazar, Assistant Medical Director of the State Insurance Fund. The Commonwealth moved for dismissal, which the trial court granted on the ground that it did not state facts sufficient to constitute a cause of action because (a) the claim was based on an alleged unlawful imprisonment, and (b) the facts alleged showed that the action of the government officer called for the exercise of discretion. In fact, § 6 of the Act on Claims and Suits against the Commonwealth, Act No. 104 of June 29, 1955, 32 L.P.R.A. § 3081 (1961 Supp.), expressly excludes from the actions for damages for which the Commonwealth may be sued those for an act or omission of an officer, agent, or employee "(b) in the discharge of a function of a discretional nature, even when there has been an abuse of discretion," and "(d) which constitutes assault, battery, or any other offense against the person, *unlawful imprisonment*, unlawful arrest, malicious persecution, slander, libel, defamation, misrepresentation, or imposture." [1]

█ The facts which gave rise to the claim, the certainty of which we must presume for the purpose of passing upon their sufficiency,[2] were stated as follows:

---

[1] These two subds. (b) and (d) were taken from subds. (a) in fine and (h) of the corresponding section of the Federal Tort Claims Act, 28 U.S.C. § 2680. Federal subd. (h) also includes any claim arising out of interference with contract rights, but does not refer to any "other offense against the person."

[2] *Sierra, Sec. of Labor* v. *Bird*, 78 P.R.R. 161, 165 (1955); *Rivera* v. *People*, 73 P.R.R. 841 (1952); *Walker* v. *Tax Court*, 72 P.R.R. 651 (1951); *Boulon* v. *Pérez*, 70 P.R.R. 941 (1950).

"1. On Wednesday, March 16, 1960, defendant José Alberto Salazar, acting in his capacity of Assistant Medical Director of the State Insurance Fund, an agency of the Commonwealth of Puerto Rico attached to the Department of Labor, personally and/or as employee and/or agent of the State Insurance Fund and of the Commonwealth of Puerto Rico, issued and 'Order of Confinement' to Clínica Juliá (Hato Rey Psychiatric Hospital, Inc.) 'referring' plaintiff to that Clínica.

"2. The 'Order of Confinement' referred to in the preceding paragraph was delivered to plaintiff by defendant José Alberto Salazar in a sealed envelope, without informing her of its contents, to take it personally to Clínica Juliá. Defendant José Alberto Salazar simultaneously ordered the State Insurance Fund to give plaintiff the money necessary to take a taxicab to Clínica Juliá and ordered a taxi to pick her up. In so acting, defendant José Alberto Salazar told plaintiff that they were sending her to Clínica Juliá for an appointment with a psychiatrist, and at no time let her know that the document which he had delivered to her in a sealed envelope for her to deliver personally to Clínica Juliá was in fact an 'Order of Confinement.'

"3. The facts alleged in the preceding paragraph occurred on the occasion of a visit which plaintiff paid to the offices of defendant José Alberto Salazar, at the latter's request, after she had undergone medical treatment upon advice of the State Insurance Fund and as a result of an accident sustained by her in the course of employment. The record of plaintiff's case in the State Insurance Fund is No. 2X-20322.

"4. In compliance with defendant José Alberto Salazar's instructions, plaintiff went to Clínica Juliá where she delivered the sealed envelope to an employee, and subsequently the plaintiff, whom employees and/or agents of defendant Hato Rey Psychiatric Hospital, Inc. (Clínica Juliá) led to believe that she would be taken to an interview with a psychiatrist, was unlawfully and against her will deprived of her liberty when defendant Hato Rey Psychiatric Hospital, Inc. (Clínica Juliá), through its employees and/or agents, kept her confined in that clinic, despite her protests and demands to be released, from Wednesday, March 16, 1960, until Sunday, March 20, 1960."

Plaintiff further alleges that during the period she was *"confined and deprived of her liberty"* she was submitted to

humiliating acts and circumstances; that as a result of such *"false imprisonment or confinement"* she has encountered problems and difficulties in her employment; and, lastly, she claims the sum of $100,000 *"for the deprivation of her liberty by defendants."* [3]

Appellant maintains that the claim against the Commonwealth is not comprised in the exception relative to "unlawful imprisonment" referred to in the Act, alleging that from the facts set forth in the complaint it appears that the acts which constitute unlawful confinement are imputed only to Hato Rey Psychiatric Hospital, Inc., and that the only imputation against the Commonwealth is "having performed acts and omissions which constituted an 'essential factor' as coactive cause in the damages sustained," but that these acts in nowise constitute by themselves an unlawful restraint of plaintiff's liberty.

Action for false imprisonment is one of the earliest tort actions known to the common law.[4] It was regarded as a trespass to the person, and fundamentally calculated to protect the individuals in the enjoyment of their liberty. The intentional confinement of a person within a limited area for any appreciable period of time, without legal authority and without his consent, constitutes the tortious act which we defined under the term of false imprisonment. *García* v. *Galiñanes Hnos., Inc.*, 83 P.R.R. 307 (1961); *Mailey* v. *De Pasquale's Estate*, 177 A.2d 376 (R.I. 1962); *Boies* v. *Raynor*, 361 P.2d 1 (Ariz. 1961); *Great Atlantic and Pacific Tea*

---

[3] The trial court denied a motion to dismiss filed by codefendant corporation. The default of Dr. José Alberto Salazar, a Commonwealth officer, on whose action the cause of action exercised is based, was entered. In this connection, see § 8 of Act No. 104 *supra*, which provides that "the judgment entered in any action authorized by such sections shall preclude any other action on the part of the claimant by reason of the same issue or matter, against the officer, agent, or employee whose act or omission gave rise to the action; and a judgment against the officer, agent, or employee shall likewise preclude any action against the Commonwealth." See, also, *Valentín* v. *Commonwealth*, 84 P.R.R. 108 (1961), especially footnote 3.

[4] 1 HARPER AND JAMES, The Law of Torts 224-26, § 3.6 (1956).

*Company* v. *Lethcol*, 279 F.2d 948 (C.A. 4, 1960) ; 3 FRUMER AND FRIEDMAN, Personal Injury 752 (1961) ; PROSSER AND SMITH, Cases and Materials on Torts 60–75 (3d ed. 1962) ; PROSSER, Handbook of the Law of Torts 48–53 (2d ed. 1955) ; Restatement, *Torts*, § 35 *et seq.;* PROSSER, *False Imprisonment: Consciousness of Confinement*, 55 Colum. L. Rev. 847 (1955) ; comments, 8 Mo. L. Rev. 336 (1943). Although it is usually associated with unlawful detention in a prison, it is not necessary that there be imprisonment properly speaking; it is sufficient that there be a restraint of the aggrieved party's liberty.[5]

■ The involuntary hospitalization of a person in a mental institution in violation of the statute constitutes false imprisonment. In *Maben* v. *Rankin*, 358 P.2d 681 (Cal. 1961), plaintiff's husband required the services of a psychiatrist, who ordered the patient's commitment to a local hospital. In view of claimant's refusal to undergo treatment, the physician administered an injection to cause drowsiness and after accomplishing this purpose she was removed to the hospital and submitted to treatment. In remanding the case to the trial court which had transmitted an erroneous instruction to the jury, the Supreme Court of California said that it involved false imprisonment and that the physician's liability depended on whether plaintiff's husband gave the consent necessary for her confinement, or whether it was an emergency warranting immediate hospitalization without the patient's consent. In *Peterson* v. *Cruickshank*, 300 P.2d 915 (Cal. 1956), the evidence only showed that defendant paid the expenses of plaintiff's treatment in a sanitarium without participating actively in the act of physical confinement. However, upon an analysis of the evidence introduced a ver-

---

[5] In Puerto Rican criminal law the offense of false imprisonment is defined as "the unlawful restraint of a person's liberty whether in a place made use of for imprisonment generally, or in one used only on the particular occasion, or by words and an array of force, without bolts or bars *in any locality whatever."* Section 241 of the Penal Code, 1937 ed., 33 L.P.R.A. § 881.

dict was brought against defendant, based on the existence of a chain of facts which connected him with plaintiff's detention. In *Dabkowski* v. *Davis*, 111 N.W.2d 68 (Mich. 1961), the action of defendant physicians consisted in issuing two certificates for the purpose of procuring a court order to commit plaintiff to a mental institution. The action for damages was dismissed on the ground of false imprisonment after determining that an emergency and the privileged character of the certificates were involved. *Cf. Orvis* v. *Brikman*, 196 F.2d 762 (C.A.D.C. 1952); *Morris* v. *University of Texas*, 348 S.W.2d 644 (Texas 1961); *Denahey* v. *Isbrandtsen Co.*, 80 F. Supp. 180 (S.D.N.Y. 1948); *Hurley* v. *Towne*, 156 A.2d 377 (Me. 1959); *Miller* v. *Director, Middletown State Hospital*, 146 F. Supp. 674 (S.D.N.Y. 1956); *False Imprisonment—Liability of Physician for False Certificate in Lunacy Proceedings*, 17 Tenn. L. Rev. 403 (1942).[6]

The liability for damages caused by false imprisonment falls not only on the perpetrators but also on those ordering or instigating it, even though they do not participate actively in the physical act of detention. *Jillson* v. *Caprio*, 181 F.2d 523 (C.A.D.C. 1950), commented in 49 Mich. L. Rev. 917 (1951), 25 St. John's L. Rev. 100 (1950), and 35 Cornell L.Q. 904 (1950); *Mayo Hotel Company* v. *Cooper*, 298 P.2d 443 (Okla. 1956); *Matovina* v. *Hult*, 123 N.E.2d 893, 898 (Ind. 1955).

Despite plaintiff's remarkable efforts to disengage the physician's action in ordering her confinement in defendant's clinic from the physical confinement, the close connection be-

---

[6] The cases of false imprisonment decided under the Federal Tort Claims Act do not shed much light on the problem discussed. *Klein* v. *United States*, 268 F.2d 63 (C.A. 2, 1959); *Tinkoff* v. *United States*, 211 F.2d 890 (C.A. 7, 1954); *Jones* v. *Federal Bureau of Investigation*, 139 F. Supp. 38 (Md. 1956); *Duenges* v. *United States*, 114 F. Supp. 751 (S.D.N.Y. 1953); *Ekberg* v. *United States*, 76 F. Supp. 99 (Ct. Cl. 1948); Annotation, *Federal Tort Claims Act Provision excepting from coverage claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, etc.*, 23 A.L.R.2d 574 (1952).

tween both is inescapable. The consequences complained of by plaintiff stem from the order of confinement. As a question of reality, this is the only starting point of the cause of action. *Cf. Ginés* v. *Aqueduct and Sewer Authority*, 86 P.R.R. 490 (1962). The fact that the physician or some other officer or employee of the Commonwealth did not participate actively in the physical act of commitment does not fail to characterize the claim as one for false imprisonment. The situation is similar to that which ordinarily occurs in cases of unlawful arrest in which, although the informer of the act takes no part in the aggrieved party's detention, his action in denouncing or imputing the commission of a tortious act is what sets the action of the police or judicial agents in motion. *Cf. Rodríguez* v. *Waterman Dock Co.*, 78 P.R.R. 702 (1955); *Rivera* v. *De Martínez*, 70 P.R.R. 456 (1949); *Vélez* v. *Toraño*, 63 P.R.R. 327 (1944).

It not being necessary for the decision of this appeal, we will leave for a more proper occasion the evaluation of a physician's professional conduct in ordering the confinement of a patient in a mental institution as the cause of an action for damages, in the light of the provisions of Act No. 235 of May 12, 1945, 24 L.P.R.A. § 141 *et seq.*[7]

In view of the conclusion reached, it is also unnecessary to discuss the second ground adduced by the trial court for dismissing the claim relative to the exercise of discretion [8] by the Commonwealth officer.

The judgment rendered by the Superior Court, San Juan Part, on June 21, 1960 will be affirmed.

---

[7] For cases of dangerous insanity, see the Act of March 14, 1907, 24 L.P.R.A. § 148 *et seq.*

[8] See, *Indian Towing Co.* v. *United States*, 350 U.S. 61 (1955); *The Discretionary Function Exception in the Federal Tort Claims Act,* 52 Mich. L. Rev. 733 (1954); *The Federal Tort Claims Act and the "Discretionary Function" Exception: The Sluggish Retreat of an Ancient Immunity,* 10 U. Fla. L. Rev. 184 (1957); Annotation, *Federal Tort Claims Act: construction of provision excepting claims involving "discretionary function or duty,"* 19 A.L.R.2d 845 (1951).