JOSÉ GARCÍA CALDERÓN, demandante y apelado, v. GALIÑANES HERMANOS, INC., demandada y apelante.

*Número*: 12191.   *Resuelto*: 15 de agosto de 1961.

*Rodríguez Otero, Ramírez & Díaz González* y *J. Quiñones Elías,* abogados de la apelante; *Antonio J. Amadeo* y *Santos P. Amadeo,* abogados del apelado.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En *Rodríguez* v. *Waterman Dock Co.,* 78 D.P.R. 738, 741 (1955) expresamos que uno de los elementos esenciales de la acción de daños y perjuicios por detención ilegal(1) es que la restricción de la libertad del demandante haya sido el resultado de los actos del demandado aconsejando, induciendo,

---

(1) La causa de acción en reclamación de daños por detención ilegal no requiere necesariamente que el perjudicado sea encarcelado. Es suficiente que ocurra cualquier forma de detención o restricción efectiva de la libertad del reclamante, sin su consentimiento, y por un período apreciable de tiempo. Harper y James, *The Law of Torts,* 1956, vol. I, sec. 3.7, pág. 226. Tampoco es necesario que medie violencia, *Gust* v. *Montgomery Ward & Co.,* 136 S.W.2d 94 (Mo. 1939); *Talcott* v. *National Exhibition Co.,* 128 N. Y. Supp. 1059 (1911), y a diferencia de la acción por persecución maliciosa no se requiere la iniciación de procedimientos judiciales que culminen en un arresto.

instigando o solicitando la iniciación de un procedimiento que culmine con la privación de dicha libertad. El mero hecho de suministrar información a un agente del orden público— juez, fiscal o policía—sobre determinados hechos no constituye por sí la instigación que se requiere como elemento de la acción. *Jiménez* v. *Sánchez*, 76 D.P.R. 370 (1954) ; *Torres* v. *Marcano*, 68 D.P.R. 880 (1948). Es preciso que medie una imputación maliciosa, hecha de mala fe y sin fundamento razonable, pero una afirmación o aseveración que responde a una creencia razonable no conlleva responsabilidad alguna. *Jiménez* v. *Sánchez*, supra; cf. *Casanova* v. *González Padín Co.*, 47 D.P.R. 488, 498 (1934) ; Nota, *False Arrest-Standard of Care of Informant*, 22 Tenn. L. Rev. 1070 (1953) ; cf. *Motive as an Essential Element of the Crime of False Imprisonment*, 38 Dick. L. Rev. 184 (1934). De otra forma, se estaría obstaculizando el procedimiento de investigación de las autoridades competentes dirigido al esclarecimiento de la verdad a los fines de exigir responsabilidad allí donde corresponda. Sobre la responsabilidad de un ciudadano por el arresto ilegal de otra persona por un agente del orden público, véase, anotación en 21 A.L.R.2d 643 (1952).

Con esta exposición breve de los principios que gobiernan las acciones de daños por detención ilegal, examinemos los hechos del presente caso, según las determinaciones formuladas por el tribunal de instancia:

"En la madrugada del domingo 18 de diciembre de 1955 el demandante salió de una fiesta familiar donde había tomado unas copas. En el sitio conocido por 'Tres Palmas', de Bayamón, fue acompañado por tres señoritas con las cuales se dirigió al restaurante 'El Nilo', en la parada 22 de Santurce, propiedad de la demandada, en donde solicitaron y tomaron cuatro copas de vermouth. El demandante le preguntó al mozo a cuánto ascendía la cuenta y cuando éste le informó que el servicio valía dos dólares, aquél hizo un cheque por tres dólares y se lo entregó al mozo con la idea de que la demandada entregara un dólar de propina al mozo, el que fue donde el cajero y

regresó a la mesa diciendo que no aceptaban el cheque. El demandante se acercó al cajero y le preguntó que por qué no le recibían el cheque, contestándole éste que él no aceptaba cheques y que solamente admitía pagos en efectivo. El demandante se identificó y explicó que no tenía moneda corriente en su poder en ese momento, asegurando que tenía fondos suficientes en el banco, lo cual era cierto. Tuvo una discusión un poco acalorada con el señor Edgar Galiñanes, administrador nocturno del restaurante. Mientras tanto, las jóvenes que acompañaban al demandante salieron del local y se marcharon.

"Llegó al establecimiento un policía a quien el señor Galiñanes le informó que el demandante había consumido y no quería pagar. El demandante protestó afirmando que quería pagar con un cheque y, como el señor Galiñanes había roto ya el cheque librado por el demandante, éste ofreció expedir uno nuevo. Al no aceptar la demandada esta nueva proposición, el policía condujo al demandante, junto al mozo del establecimiento, al cuartel de la Policía de la parada 19 de Santurce. A pesar de que el demandante tenía su vehículo estacionado allí cerca, fue llevado al cuartel en un vehículo de la Policía. El demandante, viéndose privado de su libertad, le pidió en el trayecto al policía que lo llevara donde un juez. Al llegar al cuartel y frente al cabo de la policía el demandante volvió a protestar y ofreció hacer un cheque por $100.00 en garantía de que lo que él había consumido en 'El Nilo' sería pagado. Allí logró llamar por teléfono a un Juez y después de esta conversación telefónica el cabo le dijo al demandante que podía irse. El lunes siguiente el demandante envió por correo a la demandada un cheque certificado por $3.00 el cual no le ha sido devuelto."

■■■■ Resalta inmediatamente a la vista que el juez a quo se limita a establecer a) que un agente del orden público llegó al establecimiento de la demandada, sin concluir en forma alguna que dicho agente fuera llamado o su presencia gestionada por el señor Galiñanes; (²) b) que el cajero se limitó a informar al policía sobre el incidente ocurrido con el de-

(²) En ausencia de determinación por el tribunal de instancia sobre este extremo, estamos en libertad de formular nuestra conclusión. Apreciada la prueba en conjunto, creemos que la presencia del policía no fue gestionada por Galiñanes; sino que el agente coincidió en el establecimiento debido a que entró a desayunarse antes de cumplir con la tarea que tenía

mandante; y *c*) que una vez conocidas las versiones de los protagonistas del desagradable incidente, el policía condujo al demandante, junto al mozo que le había atendido, al cuartel de la Parada 19, para investigación. No hay duda de que la relación de los hechos que el cajero transmitió al policía fue fiel a la verdad en cuanto a los hechos sustanciales, o sea, el consumo por el demandante de bebida en el establecimiento, la falta de pago en moneda de curso legal, la insistencia del cajero en no aceptar un cheque expedido o que ofreció expedir el demandante porque ésta era la norma del negocio. Por otro lado, no se concluyó por el juez que la actuación del policía al llevar al demandante al cuartel obedeciera a instrucciones o insinuaciones del agente de la demandada.

En las conclusiones de derecho del tribunal de instancia se indica que "como en este caso el demandante no cometió acto delictivo alguno, la privación de su libertad, al conducírsele al Cuartel de la Policía, fue ilegal". Sin embargo, de esto no surge necesariamente la responsabilidad de la parte demandada, a menos que se hubiese demostrado que su empleado fue quien efectivamente puso en movimiento la maquinaria del orden público para obtener tal restricción de la libertad. Pero, como hemos visto, no hay determinación alguna a ese efecto, a pesar de que el demandante en el testimonio prestado insistió repetidamente en que el cajero fue quien envió a buscar el policía. Además, si sostuviéramos la posición del juez sentenciador, estaríamos en efecto resolviendo que en todo caso que un ciudadano se querella o expresa a un agente del orden público ciertos hechos que pueden constituir un delito sería responsable de las consecuencias de la citación de dicha persona para investigación. Por otro lado, presumiendo que en el presente caso el demandante no

---

asignada para ese día de recoger a uno de sus superiores para transportarlo a Isla de Cabras. Esto lo corrobora el hecho de que a pesar de que llevó al demandante al cuartel, inmediatamente se ausentó de la investigación para poder llegar puntualmente, a las seis de la mañana, a cumplir su encomienda.

hubiese incurrido en una transgresión de la ley,(³) no es menos cierto que no podía exigir que se le aceptara un cheque para satisfacer el importe de lo que había consumido.(⁴)

En *Gogue* v. *Mac Donald*, 218 P.2d 542 (Cal. 1950) se trataba de una situación de hechos de mayor gravedad que la que consideramos: el demandado se querelló ante un juez de paz de que el demandante había sacado sus pertenencias de una cabaña que le había sido arrendada, sin pagar previamente la renta convenida; el juez preparó una denuncia contra el demandante por violación al artículo 537 del Código Penal de California y expidió la correspondiente orden de arresto, que fue diligenciada; al no poder prestar fianza estuvo detenido en la cárcel por algún tiempo. Posteriormente se determinó que los hechos según expuestos por el demandado no constituían delito alguno. Al desestimar una acción de daños presentada con motivo de los anteriores hechos, se indicó que no procedía imponer responsabilidad civil en ausencia de una alegación de y prueba sobre la existencia de malicia al exponer los hechos que dieron margen a la acusación. "No existe responsabilidad meramente porque los hechos narrados al magistrado no constituyan delito público", termina la opinión. Véanse, además, *Hughes* v. *Oreb*, 228 P.2d 550, 553 (Cal. 1951); *Peterson* v. *Robinson*, 277 P.2d 19, 23 (Cal. 1954); *J. C. Penney Co.* v. *Reynolds*, 329 S.W.2d 104, 107 (Tex. 1959).

En virtud de todo lo expuesto, *procede ordenar la revocación de la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 3 de diciembre de 1956.*

(³) Véase, artículo 475 del Código Penal (33 L.P.R.A. sec. 1821) y el artículo 537 del Código Penal de California (West, Annotated California Codes, pág. 829).

(⁴) El tribunal a quo determinó que "es la costumbre general en un establecimiento de la categoría del de la demandada de aceptar el pago en cheque, especialmente cuando la cantidad es mínima y el parroquiano, librador del cheque, se identifica debidamente". No hay prueba alguna sobre este hecho en la transcripción, y en ausencia de la misma, el juez estaba impedido de formular tal conclusión. La evidencia presentada sostiene una determinación contraria, pues si algo se estableció firmemente es que en el establecimiento de la demandada no se admiten cheques.