MYRIAM S. DOBBINS, demandante y recurrente, *v.* HATO REY PSYCHIATRIC HOSPITAL, INC., y ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrido el último.

Número: 404     Resuelto: 27 de diciembre de 1962

*Carlos Carrera Benítez,* abogado de la recurrente; *J. B. Fernández Badillo, Procurador General, Jorge Segarra Olivero,* y *Arturo Estrella, Procuradores Generales Auxiliares,* abogados del recurrido, Estado Libre Asociado de Puerto Rico.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La recurrente Myriam S. Dobbins incoó una demanda en reclamación de daños y perjuicios contra el Estado Libre Asociado de Puerto Rico, la corporación Hato Rey Psychiatric Hospital, Inc.—también conocida como Clínica Juliá—y el doctor José Alberto Salazar, Director Médico Auxiliar del Fondo del Seguro del Estado. El Estado Libre solicitó la desestimación, a lo cual se accedió por el tribunal de instancia por entender que no aducía hechos constitutivos de causa de acción ya que a) la reclamación se fundaba en un supuesto encarcelamiento ilegal, y, b) los hechos alegados demostraban que la actuación del funcionario del gobierno requirió el ejercicio de su discreción  En efecto, el Art. 6 de la Ley de Reclamaciones y Demandas Contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. (Supl. 1961) sec. 3081, expresamente excluye de las acciones en reclamación de daños y perjuicios por las cuales se puede demandar al Estado Libre aquéllas por acto u omisión de

un funcionario, agente o empleado "(b) en el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción" y "(d) constitutivo de acometimiento, agresión u otro delito contra la persona, *encarcelación ilegal,* arresto ilegal, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura." [1] ▮

Los hechos que dieron margen a la reclamación, cuya certeza debemos presumir a los fines de juzgar su suficiencia, [2] fueron expuestos en la siguiente forma:

"1. El miércoles 16 de marzo de 1960, el demandado José Alberto Salazar, actuando en su capacidad de Director Médico Auxiliar del Fondo del Seguro del Estado, que es una dependencia del Estado Libre Asociado de Puerto Rico adscrita al Departamento del Trabajo, personalmente y/o como empleado y/o agente del Fondo del Seguro del Estado y del Estado Libre Asociado de Puerto Rico, expidió una 'Orden de Hospitalización' dirigida a la Clínica Juliá (Hato Rey Psychiatric Hospital, Inc.) en la que 'refería' a dicha Clínica a la demandante.

"2. La 'Orden de Hospitalización' a que se alude en el párrafo anterior fue entregada a la demandante por el demandado José Alberto Salazar bajo sobre cerrado, sin advertirle su contenido, para que la llevase personalmente a la Clínica Juliá. Simultáneamente, el demandado José Alberto Salazar ordenó que se le entregara por el Fondo del Seguro del Estado, a la demandante, el dinero necesario para transportarse en taxi a la Clínica Juliá, y ordenó venir un taxi para recogerla. Al así actuar, el demandado José Alberto Salazar manifestó a la demandante que se la enviaba a la Clínica Juliá a entrevistarse con un psiquiatra y en ningún momento le hizo saber que el documento que a la demandante había entregado bajo sobre cerrado para que fuese entregado personalmente por ella a la Clínica Juliá era, en efecto, una 'Orden de Hospitalización'.

[1] Estos dos incisos (b) y (d) fueron adoptados de los incisos (a) *in fine* y (h) de la sección correspondiente del Federal Tort Claims Act, 28 U.S.C. sec. 2680. El inciso (h) federal incluye además cualquier acto constitutivo de interferencia con derechos contractuales, pero no se refiere a cualquier "otro delito contra la persona."

[2] *Sierra, Sec. Trabajo* v. *Bird,* 78 D.P.R. 170, 174 (1955); *Rivera* v. *Pueblo,* 73 D.P.R. 902 (1952); *Walker* v. *Tribl. de Contribuciones y Tesorero,* 72 D.P.R. 698 (1951); *Boulon* v. *Pérez,* 70 D.P.R. 988 (1950).

"3. Los hechos alegados en el párrafo anterior ocurrieron con motivo de una visita que hizo la demandante a las oficinas del demandado José Alberto Salazar, a instancias de éste, luego de haber estado la demandante bajo tratamiento médico por orden del Fondo del Seguro del Estado y como resultado de un accidente sufrido por la demandante en el curso de su empleo. El expediente del caso de la demandante en el Fondo del Seguro del Estado es el número 2X–20322.

"4. La demandante, cumpliendo las instrucciones del demandado José Alberto Salazar, se dirigió a la Clínica Juliá donde hizo entrega del sobre cerrado que portaba a un empleado en dicha Clínica y posteriormente la demandante, a quien empleados y/o agentes de la demandada Hato Rey Psychiatric Hospital, Inc. (Clínica Juliá) indujeron a creer que sería conducida a una entrevista con un psiquiatra, fue privada ilegalmente y contra su voluntad, de su libertad, al mantenerla la demandada Hato Rey Psychiatric Hospital, Inc. (Clínica Juliá) por medio de sus empleados y/o agentes, confinada en dicha clínica, a pesar de sus protestas y requerimientos para que la dejasen libre, desde el miércoles 16 de marzo de 1960 hasta el domingo 20 de marzo de 1960."

Continúa aludiendo la demandante a que durante el período en que estuvo "*confinada y privada de su libertad*" se le sometió a actos y circunstancias humillantes; que como resultado de dicha "*prisión o confinamiento ilegal*" ha tenido problemas y dificultades en su empleo; y termina reclamando la suma de $100,000 "*por la privación de la libertad* de que fue objeto por los demandados." (3)

---

(3) El tribunal a quo declaró sin lugar una moción para desestimar presentada por la corporación codemandada. Se anotó en autos la rebeldía del doctor José Alberto Salazar funcionario del Estado Libre en cuyas actuaciones se basa la causa de acción ejercitada. En relación con este particular, véase, el Art. 8 de la Ley Núm. 104, *supra*, que dispone que "[l]a sentencia que se dicte en cualquier acción autorizada por dichas secciones, impedirá toda otra acción por parte del reclamante, por razón de la misma cuestión o materia, contra el funcionario, agente o empleado cuyo acto u omisión dio origen a la acción; y la sentencia contra el funcionario, agente o empleado impedirá igualmente toda acción contra el Estado." Véase además, *Vda. de Valentín* v. *ELA*, (1961) 84 D.P.R. 112 especialmente el escolio 3.

La recurrente sostiene que la reclamación incoada contra el Estado Libre no está comprendida en la excepción relativa a "encarcelación ilegal" a que se refiere la ley, indicando que de los hechos expuestos en la demanda aparece que la comisión de los actos constitutivos del confinamiento ilegal se imputan únicamente a la Hato Rey Psychiatric Hospital, Inc., y que al Estado se le atribuye solamente "haber realizado actos y omisiones que constituyeron un 'factor substancial', como causa co-activa, en los daños sufridos," pero que estos actos en forma alguna constituyen por sí solos una restricción ilegal de la libertad de la demandante. ▆▆

La acción por encarcelamiento ilegal es una de las más antiguas reconocidas por el derecho común.(⁴)   Se le consideraba como una transgresión a la persona, y fundamentalmente se dirige a proteger a los individuos en su disfrute de la libertad.   El confinamiento intencional de una persona dentro de ciertos límites definidos por un período considerable de tiempo, sin autoridad legal para ello y sin su consentimiento, constituye la actuación torticera que definimos bajo el término de encarcelamiento ilegal. *García Calderón* v. *Galiñanes Hermanos*, 83 D.P.R. 318 (1961) ; *Mailey* v. *De Pasquale's Estate*, 177 A.2d 376 (R.I., 1962) ; *Boies* v. *Raynor*, 361 P.2d 1 (Ariz. 1961) ; *Great Atlantic and Pacific Tea Company* v. *Lethcol*, 279 F.2d 948 (C.A. 4, 1960) ; Frumer y Friedman, *Personal Injury* (1961), Vol. 3, pág. 752; Prosser y Smith, *Cases and Materials on Torts*, (3a. ed. 1962), págs. 60–75; Prosser, *Handbook of the Law of Torts* (2a. ed. 1955), págs. 48–53; *Restatement, Torts*, § 35 *et seq.;* Prosser, *False Imprisonment: Consciousness of Confinement*, 55 Col. L. Rev. 847 (1955) ; Comentario, 8 Mo. L. Rev. 336 (1943).   Aunque usualmente se asocia con la detención ilegal en una prisión, no es indispensable que me-

---

(⁴)Harper y James, *The Law of Torts* (1956), vol. 1, § 3.6, págs. 224–226.

die un encarcelamiento propiamente dicho; es suficiente con que ocurra una restricción de la libertad del perjudicado.(5) ■

La reclusión involuntaria de una persona en una institución para enfermos mentales en violación de las disposiciones estatutarias sobre higiene mental constituye un encarcelamiento ilegal. En *Maben* v. *Rankin*, 358 P.2d 681 (Cal. 1961), el esposo de la demandante requirió los servicios de un psiquiatra, quien ordenó la reclusión de la paciente en una clínica de la localidad. Ante la resistencia de la reclamante a someterse a tratamiento, el médico le administró una inyección para adormecerla, y una vez logrado este propósito, fue trasladada a la clínica mencionada y sometida a tratamiento. Al devolver el caso al tribunal de origen debido a una instrucción errónea trasmitida al jurado, la Corte Suprema de California indicó que se trataba de un encarcelamiento ilegal y que la responsabilidad del médico dependía de si el esposo de la demandante prestó el consentimiento necesario para el confinamiento o si se trataba de una emergencia que justificaba la reclusión inmediata aun sin el consentimiento de la paciente. En *Peterson* v. *Cruickshank*, 300 P.2d 915 (Cal. 1956), la prueba solamente demostró que el demandado pagó los gastos del tratamiento de la demandante en un sanatorio para enfermos mentales, sin que participara activamente en el acto del confinamiento físico. Sin embargo, mediante un análisis de toda la evidencia presentada se sostuvo un veredicto contra dicho demandado, basándose en la existencia de una cadena de hechos

---

(5) En el Derecho Penal puertorriqueño se define el delito de prisión ilegal como "el acto de restringir ilegalmente la libertad de una persona, bien reteniéndola en algún local destinado generalmente a la reclusión de presos, o usado sólo en tal ocasión, bien por medio de palabras y el alarde de fuerza, sin cerrojos ni barras, *en cualquier lugar*." Art. 241 del Código Penal, ed. 1937, 33 L.P.R.A. sec. 881.

que lo conectaba con la detención de dicha demandante. En *Dabkowski* v. *Davis*, 111 N.W.2d 68 (Mich. 1961), la actuación de los médicos demandados consistió en expedir dos certificados a los fines de obtener una orden de un tribunal para que se recluyera a la demandante en una institución para enfermos mentales. Se desestimó la acción de daños y perjuicios por encarcelamiento ilegal, previa determinación de que se trataba de una emergencia y del carácter privilegiado de las certificaciones. Cfr. *Orvis* v. *Brikman*, 196 F.2d 762 (C.A. D.C., 1952); *Morris* v. *University of Texas*, 348 S.W.2d 644 (Texas 1961); *Denahey* v. *Isbrandtsen Co.*, 80 F. Supp. 180 (S.D. N.Y. 1948); *Hurley* v. *Towne*, 156 A.2d 377 (Me. 1959); *Miller* v. *Director, Middletown State Hospital*, 146 F. Supp. 674 (S.D. N.Y. 1956); *False Imprisonment—Liability of Physician for False Certificate in Lunacy Proceedings*, 17 Tenn. L. Rev. 403 (1942).[5] ∎

La responsabilidad por los daños causados con motivo de un encarcelamiento ilegal recae no sólo sobre las personas que perpetran el confinamiento, sino también sobre quienes lo ordenan o instigan, aun cuando no participen activamente en el acto físico de la detención. *Jillson* v. *Caprio*, 181 F.2d 523 (C.A. D.C. 1950), comentado en 49 Mich. L. Rev. 917 (1951), 25 St. John's L. Rev. 100 (1950) y 35 Cornell L. Q. 904 (1950); *Mayo Hotel Company* v. *Cooper*, 298 P.2d 443 (Okl. 1956); *Matovina* v. *Hult*, 123 N.E.2d 893, 898 (Ind. 1955).

---

[5] Los casos de encarcelamiento ilegal resueltos bajo el Federal Tort Claims Act no arrojan mucha luz sobre el problema discutido. *Klein* v. *United States*, 268 F.2d 63 (C.A. 2, 1959); *Tinkoff* v. *United States*, 211 F.2d 890 (C.A. 7, 1954); *Jones* v. *Federal Bureau of Investigation*, 139 F. Supp. 38 (Md. 1956); *Duenges* v. *United States*, 114 F. Supp. 751 (S.D. N.Y. 1953); *Ekberg* v. *United States*, 76 F. Supp. 99 (Ct. Cl. 1948); Anotación, *Federal Tort Claims Act provision excepting from coverage claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, etc.*, 23 A.L.R.2d 574 (1952).

A pesar de los notables esfuerzos que ha realizado la recurrente para desvincular la actuación del médico al ordenar su reclusión en la clínica de la demandada con el confinamiento físico efectuado, es inescapable la relación íntima que guardan ambos hechos. Las consecuencias de que se querella la demandante tienen su origen en la orden de hospitalización. Como cuestión de realidad, éste es el punto de partida único de la causa de acción. Cfr. *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518 (1962). El hecho de que el médico o algún otro funcionario o empleado del Estado no participara activamente en el acto físico de la reclusión no deja de caracterizar la reclamación como una por encarcelamiento ilegal. La situación es similar a la que ordinariamente ocurre en los casos por arresto ilegal, en que si bien el denunciante del hecho no toma parte en la detención del perjudicado, es su actuación al denunciar o imputar la comisión de un acto delictivo la que pone en marcha la acción de los agentes policiacos o judiciales. Cfr. *Rodríguez* v. *Waterman Dock Co.*, 78 D.P.R. 738 (1955); *Rivera* v. *De Martínez*, 70 D.P.R. 482 (1949); *Vélez* v. *Toraño*, 63 D.P.R. 339 (1944).

Por no ser necesario a los fines de resolver el presente recurso dejaremos para ocasión más propicia la evaluación de la conducta profesional de un médico al ordenar la reclusión de un paciente en una institución para enfermos mentales, como fuente de una acción de daños y perjuicios, a la luz de las disposiciones de la Ley Núm. 235 de 12 de mayo de 1945, 24 L.P.R.A. sec. 141 y ss. [7]

En vista de la conclusión a que hemos llegado también es innecesario discutir el segundo fundamento aducido por el tribunal de instancia para desestimar la demanda relativo

---

[7] Para los casos de locura peligrosa, véase la Ley de 14 de marzo de 1907, 24 L.P.R.A. sec. 148 y ss.

al ejercicio de discreción (⁸) por el funcionamiento del Estado Libre.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 21 de junio de 1960.*

---

(⁸) Véanse, *Indian Towing Co. v. United States,* 350 U.S. 61 (1955); *The Discretionary Function Exception in the Federal Tort Claims Act,* 52 Mich. L. Rev. 733 (1954); *The Federal Tort Claims Act and the "Discretionary Function" Exception: The Sluggish Retreat of an Ancient Immunity,* 10 U. Fla. L. Rev. 184 (1957); Anotación, *Federal Tort Claims Act: construction of provision excepting claims involving "discretionary function or duty",* 19 A.L.R.2d 845 (1951).