Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
Luz M. Santos Febus ("Santos") nos solicita la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 24 de septiembre de 1996. Mediante el referido dictamen, se declaró no ha lugar la demanda que sobre daños y perjuicios presentara Santos contra los apelados K-MART Inc. ("K-MART"), su aseguradora y Gerardo Rivera Torres ("Rivera").
II
La prueba presentada por Santos consistió de su propio testimonio. La de K-MART consistió del testimonio de Norma Vélez Muñiz, su Agente de Control de Pérdidas en la tienda en que ocurrieron los hechos.
Se desprende de la exposición narrativa aprobada y certificada por el foro de instancia, en lo que respecta al testimonio de Santos, que ésta acompañada de su hija y una niña de tres años visitaron el viernes 6 de mayo, faltando dos (2) días para el día de las madres, la tienda K-MART ubicada en el Municipio de Guayama en gestiones de compras. La tienda estaba concurrida. Fue de inmediato al lugar donde vendían las batas. Ese día ya ella había ido a esa tienda acompañada de su esposo consensual, Luis A. Bernier Fue y cogió unas batas y una lamparita y salió de inmediato a pagar la mercancía. Estuvo en la tienda alrededor de las 6:00 m hasta las 7:00 m, y ya a las 7:00 iba saliendo dirigiéndose a pagar la mercancía. Al llegar al lugar de pago, su hija mayor tuvo la encomienda de pagar la mercancía comprada. La mercancía la había echado en un carro que provee la tienda para acarrear la mercancía. La niña pequeña de tres años iba montada en el carro para que no se moviera del lugar. Mientras su hija pagaba, Santos se iba a mover hacia el frente de las cajas para esperar a su hija en lo que pagaba. En ese momento, la niña comenzó a llorar y quería bajarse del carro. Cuando su hija la bajó del carro ésta aprovechó y salió corriendo hacía el interior de la tienda Santos la siguió *914 corriendo para agarrarla pero la niña se le perdió detrás de las góndolas y agarró otro carro de otra persona Santos le gritó a la niña que soltara el carro, pero la niña siguió empujándolo. La niña empezó a correr hacia la puerta de salida. Cuando Santos llegó al lugar donde había divisado a la niña, le gritó que soltara el carro, pero ésta lo siguió empujando. La niña llegó a una esquina de la tienda y empezó a correr hacia el frente de la tienda, hacía la puerta de salida; cuando Santos llegó al lado donde la había divisado, ya la niña había salido fuera de la tienda.
Santos le gritó a la niña que soltara el carro, pero la niña salió con el carro, dado el hecho de que en los momentos en que se acercaba a la puerta otro parroquiano abrió la puerta permitiendo a la niña salir. Santos le pidió a ese parroquiano que no abriera la puerta, pero no pudo evitar que la niña saliera de la tienda. Agarró a la niña y mientras esto sucedía, el parroquiano que alegadamente abrió la puerta desapareció. En ese momento llegó Gerardo Rivera Torres, encargado de las puertas, gritándole que ella se había robado el carro. Le dijo "suelta que te cogí robando, tú te estabas llevando eso". Santos negó lo imputado y le aclaró a Rivera que le estaba quitando el carro a la niña porque ésta lo saco sin permiso de la tienda. Rivera le repostó "yo te estoy viendo a tí, que tú te estás robando el carro y ahora vamos para adentro, vamos que tú tienes que comparecer sobre esto". Santos negó de nuevo las imputaciones.
La gente se estaba reuniendo allí para observar el incidente, ya que se decía que habían sorprendido a una señora robando. En ese momento llegó la hija de Santos, quien se acercó porque al ver la gente reuniéndose pensó que se trataba de Santos, su mamá. Le dijo a Rivera que eso no era de su mamá, ya que ella estaba pagando la mercancía que compraron, que la mercancía la había sacado la pequeña. Santos le tiró el carro que tenía la niña encima a Rivera y trató de salir del lugar, éste la siguió y la agarró. Llamó a otra persona para que la detuviera y expresó "ésta no se me va a ir como se me han ido otros".
El señor Rivera la detuvo y la llevó al interior de la tienda Este le preguntó sobre sus cómplices. Santos no se llevó a la niña, la dejó con su otra hija vagando por toda la tienda. Llegó otra persona -una joven- de la oficina de seguridad de la tienda y le dijo que caminara o le ponía las esposas. Al llegar a la oficina Rivera le pidió que abriera la cartera, la vació y no encontró mercancía hurtada. Rivera llamó la policía. Llegaron tres agentes. Rivera se llevó el carro con la mercancía hurtada para otra oficina en la tienda. Posteriormente, se le mostró la mercancía a Santos y ella vió ropa de niño, camisas de hombre y mujer, y otras cosas.
Retractaron la mercancía y la contaron. El precio de la mercancía pasaba de los $300.00. La policía la arrestó, ya que Rivera le informó que ella se había robado la mercancía. La policía la llevó al cuartel sin esposarla y la citaron. Luego la acusaron y salió absuelta. Tuvo gastos de honorarios de abogado por $5,900.00 y sufrió mucho. La gente la humillaba, hablaba de ella. La miraban y se sentía mal, se descontroló de los nervios y perdió la tranquilidad. Ese fue su testimonio en el interrogatorio.
En el interrogatorio declaró más o menos igual a lo ya declarado. Declaró recordar algunas cosas, no todas de las que sucedieron y sobre lo que dijo Rivera. Admite que la niña no tenía visibilidad sobre el mango del carro, que no chocó con ninguno de los anaqueles. Que la niña corrió empujando el carro y salió de la tienda, que nunca la pudo alcanzar Las puertas de la tienda hay que abrirlas con la mano. La niña no empujó la puerta lo hizo otra persona y así ella pudo salir.
Estaba fuera de la tienda cuando Rivera interviene con ella con mercancía que no se había pagado. La niña estaba bajo su custodia y supervisión en ese momento. Rivera le pidió el recibo de pago de la mercancía que estaba en el carrito que la niña empujó y no se lo mostró porque la mercancía no era de ella. Dijo que no iba a pagar por mercancía que no era de ella. Negó que al llegar a la oficina de la tienda estuviera Normaris Vélez. No estuvo allí nunca, lo dice porque la conoce.
Terminado el contrainterrogatorio el juez que presidió la vista le preguntó a Santos si había recibido tratamiento psiguiátrico o psicológico y contestó que no. Sometido el caso, la representación de K-MART solicitó la desestimación de la demanda argumentando que ésta no había supervisado bien a la niña y que no mostró recibo de pago, que la detención se efectuó fuera de la tienda por mercancía que no había sido pagada y que la intervención de los empleados de la tienda fue una razonable. El juez la declaró No Ha Lugar.
*915 Por su parte, K-MART, como hemos mencionado, presentó como testigo a Norma Iris Vélez Muñiz, su empleada de seguridad, quien llevaba trabajando con K-MART como dos años y medio. Declaró tener experiencia en el área de seguridad y en el control de mercancía. Su intervención con las personas conlleva un proceso de observación cuando toman la mercancía, la sacan de la tienda y luego se interviene. Fue adiestrada durante varios meses en seguridad para poder intervenir con las personas que hurtan mercancía en K-MART. Su trabajo es en equipo, se comunican por radio, señas, etc. No se identifican para así pasar por inadvertidos y poder realizar su trabajo. Es política de K-MART la integridad y el hablar con la verdad en todo momento, así también la de ella.
A la fecha del incidente trabajaba en K-MART de Guayama, ahora es Gerente de Seguridad en la tienda K-Mart de Cayey. Gerardo Rivera Torres era su supervisor, pero ya no trabaja para K-Mart. Este se encuentra en los Estados Unidos de América, no sabe dónde. Declaró conocer a Santos, porque para el 6 mayo de 1994, se intervino con ella en la tienda K-Mart de Guayama.
El día de los hechos, le notificaron que había una persona en la tienda que había substraído mercancía, le describieron a esa persona y su descripción resultó ser la de Santos. La información se la ofreció Gerardo Rivera, quien le informó que Santos había substraído la mercancía y la echaba en el carrito de compras. De inmediato, ella comenzó a investigar. Santos tenía bastante mercancía en el carrito. Observó cuando ésta iba a salir de la tienda, y pasó por las cajas registradoras sin pagar la mercancía. El carrito lo empujaba Santos y no la niña. En la puerta no había ningún empleado de la tienda, percatándose Santos de ello y empezó a empujar el carrito fuera de la tienda. En ese momento la acompañaba una niña pequeña. Una vez fuera de la tienda Norma Iris intervino con Santos en unión a Gerardo Rivera. La niña no podía empujar el carrito lleno de mercancía. La mercancía tenía un valor de $200.00 a $300.00. Además, para poder abrir las puertas de la entrada hay que empujarlas pues son muy pesadas.
Al intervenir con Santos y la niña, ya éstas se encontraban fuera de la tienda. No se le mostró ningún recibo de compra de la mercancía que estaba en el carrito, porque Santos dijo que era del Departamento de "Lay Away". Los artículos que se compran en ese Departamento se ponen en bolsas plásticas transparentes y tienen el boleto de compra visible. La mercancía en el carrito no era de "lay away" por razón de que no se cumplió con los requisitos de estar en bolsas plásticas transparentes y tener el recibo de compra visible.
Santos trató de sacar la mercancía y la empleada de la puerta le pidió el recibo quien no lo dió, alegando que ésta era de "lay away". Ante esa situación investigaron, fueron al Departamento de "lay away" y la persona que allí atendía afirmó que la mercancía no era de allí.
Santos no había estado por allí. Gerardo Rivera le preguntó a Santos qué iba a hacer y ésta se mantuvo callada, dando vueltas por la tienda viendo la mercancía.
Se le pidió a Santos que fuera a la Oficina y ésta no quiso ir, solicitó que "por favor no le hicieran pasar una vergüenza". La niña estuvo en todo momento con Santos. Allí se le explicó la intervención y Santos comenzó a llorar y manifestó "que no lo volvía a hacer, que lamentaba mucho lo sucedido, pero que por favor la dejaran ir"; estaba llorando.
Aclaró que en ningún momento se utilizaron palabras soeces en contra de Santos. Que ésta en un momento salió de la oficina corriendo y ella la persiguió y le pidió que volviera a la oficina, que ésta volvió de mala gana y no cooperó con el interrogatorio. En la oficina estaban presentes la niña de 4 años y Santos. Luego llegó la Policía y Santos cooperó. Posteriormente se le sometió a Santos un caso por Apropiación Ilegal Agravada.
En el contrainterrogatorio se reafirmó en lo que había declarado. Añadió que fue testigo en el caso criminal contra Santos; que cree no prestó declaración a pesar de haber observado la conducta criminal de Santos. Originalmente no la incluyeron como testigo en el caso criminal, que fue incluida varios meses después, en septiembre de 1994. Admitió que no le había declarado nada de lo de aquí declarado al fiscal investigador del caso.
Trabajaba en equipo con Gerardo Rivera. No recuerda si el Ledo. Cordero Pueyo la interrogó en el *916 caso criminal. No recuerda haber dicho en el procedimiento criminal que lo único que vió en relación con la conducta de Santos en la tienda fue lo que ocurrió en la oficina de seguridad después que Santos fue detenida. No recuerda si su versión que dió sobre la intervención de Gerardo Rivera con la cartera de Santos era diferente a la que ofreció Rivera.
En el redirecto, se reafirmó en la declaración que dió originalmente en el interrogatorio directo. Terminada la prueba, las partes sometieron su caso.
En sentencia emitida el 24 de septiembre de 1996, el foro de instancia, a base de la credibilidad que le merecieron los testigos declaró No Ha Lugar la demanda presentada por Santos.
Inconforme con la sentencia, Santos apeló ante nos.
III
En su escrito alega, en esencia, que el foro de instancia erró en la apreciación de la prueba y en la aplicación a los hechos del caso la doctrina de "culpa in vigilando" recogida en el Art. 1803 del Código Civil, 31 L.P.R.A. see. 5142. Veamos. Basó su decisión en que la causa de acción por detención ilegal al amparo del art. 1802 depende del criterio de razonabilidad y de los requisitos esbozados por la jurisprudencia y considerando la prueba presentada ante el tribunal, esa detención fue una razonable.
Advierte el tribunal de instancia que, aun cuando fuera cierta la alegación de que fue la menor quien extrajo de la tienda la mercancía en cuestión, la intervención continúa siendo razonable.
Aclara, además, el tribunal que los actos de la hija de crianza de tres (3) años de edad, son responsabilidad exclusiva de la madre de crianza y que ésta incurrió en negligencia al no ofrecer la supervisión y vigilancia necesaria a la menor bajo su custodia, por lo que aplica la doctrina de "culpa in vigilando" del artículo 1803 del Código Civil, 31 L.P.R.A sec. 5142.
Es doctrina reiteradamente establecida que en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no intervendrán con la apreciación de la prueba que realicen los tribunales de instancia. Rodríguez Oyóla v. Machado Díaz, _ D.P.R. _ (1994), 94 J.T.S. 82; Coop. de Seguros Múltiples v. Lugo Torres, _ D.P.R. _ (1994), 94 J.T.S. 77; Rodríguez Amadeo v. Santiago Torres, _ D.P.R. _ (1993), 93 J.T S. 106.
Como regla general, el tribunal que vió la prueba está en mejor posición que un tribunal apelativo para aquilatar la prueba testifical, porque pudo observar la forma en que se expresaron y comportaron los testigos y aquilatar la sinceridad de sus testimonios López Vicil v. ITT Intermedia, _ D.P.R. _ (1997), 97 J.T.S 42.
Es por eso que en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, el tribunal apelativo no debe intervenir con la apreciación de la prueba que hiciere el juzgador de instancia. Mercado Rivera v. Univ. Católica, _ D.P.R. _ (1997), 97 J.T.S. 106.
Ante la existencia de prueba conflictiva, es al juzgador al que toca dirimir ese conflicto. López Vicil v. ITT Intermedia, supra.
En el caso de autos, los hechos esenciales están en controversia. El foro de instancia dirimió la controversia y concluyó expresamente que, a base de la credibilidad de los testimonios que tuvo ante sí, declaraba No Ha Lugar la demanda. Es decir, dicho foro dirimió el conflicto de prueba en contra de Santos.
Santos no ha puesto en condiciones a este Tribunal de poder determinar que dicho foro erró en la apreciación de la prueba que tuvo ante sí. No hay razón alguna que nos lleve a concluir que, el foro de instancia actuó motivado por pasión, prejuicio, parcialidad o error manifiesto. Concluyendo lo anterior y aplicando el derecho a los hechos del presente caso, no percibimos razón alguna para intervenir en la apreciación que de la prueba hiciera el foro de instancia.
*917 Santos, además, plantea que su detención fue irrazonable. La irrazonabilidad o razonabilidad de la detención depende de la interpretación que del derecho aplicable se realice.
El principio general de responsabilidad civil extracontractual en el caso de actuaciones de empleados de establecimientos comerciales, establece que el dueño del establecimiento comercial responde civilmente si, mediando culpa o negligencia, alguno de sus empleados le causa daño a un tercero en el ejercicio de sus funciones. Artículo 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 5141 y 5142, respectivamente.
En los casos de detención ilegal uno de los elementos esenciales de la acción es que la restricción de libertad del perjudicado haya sido el resultado de los actos del demandado aconsejando, induciendo, instigando o solicitando la iniciación de un procedimiento que culmine con la privación de dicha libertad. García Calderón v. Galiñanes Hermanos, 83 D.P.R. 318, 319-320 (1961), No es necesario que medie violencia, ni que se hayan iniciado procedimientos judiciales que culminen en un arresto, ni se requiere que la persona perjudicada sea encarcelada, ya que es suficiente que ocurra cualquier forma de detención o restricción efectiva de la libertad del reclamante, sin su consentimiento y por un período apreciable de tiempo. García Calderón v. Galiñanes Hermanos, 83 D P.R. a la pág. 319.
Los elementos de la causa de acción en daños y perjuicios al amparo del art. 1802 por detención ilegal, 31 L.P.R.A. 5141, han sido esbozados por la jurisprudencia. Se reconocen como elementos constitutivos de esta causa, (1) la intención de restringir la libertad de una persona; (2) el que haya un acto positivo encaminado a producir dicha restricción; (3) que ésta se produzca; (4) que sea involuntaria; (5) que el perjudicado esté consciente de ello; y (6) que exista relación causal entre la restricción y el daño que se reclama. Parrilla Báez v. Airport Catering, _ D P.R _ (1993), 93 J.T.S 66, a la Pág 10,666; Dobbins v. Hato Rey Psychiatric Hospital, 87 D.P.R. 30, 34-35 (1962).
La razonabilidad de las actuaciones de una persona particular que causa o efectúa la detención de un ciudadano que no ha cometido un delito se mide tomando en consideración: la persona del demandado, su edad, preparación intelectual, condiciones morales y sus experiencias previas; la persona del detenido, incluso su edad, apariencia y comportamiento; conocimiento que en la fecha de los hechos tuviera el demandado de la persona del detenido y aquellas que con él se relacionaban; la conducta sospechosa, incluso la gravedad del delito que ella pudiera implicar, el lugar, la ocasión y la frecuencia de dicha conducta. Parrilla Báez v. Airport Catering, _ D.P.R. _ (1993), 93 J.T.S., a la pág. 10,666; Ayala v. San Juan Racing Corp., 112 D.P.R. 804, 816-817 (1982).
Al aplicar los criterios de la jurisprudencia al caso de autos concluimos que la intervención de los empleados de K-MART con Santos fue mínima y razonable. Algunos de los actos que motivaron la intervención fue presencia de Santos por un tiempo razonable en el establecimiento; notificación de que había una persona en la tienda que había substraído mercancía, la que describieron y su descripción resultó ser la de Santos; pasar por las cajas registradoras sin pagar; no haber ningún empleado en la puerta de salida, por lo que ésta aprovechó para empujar el carrito fuera de la tienda; no haber mostrado los recibos de compra a los empleados de K-MART cuando éstos intervienen con ella, alegando que la mercancía era del Departamento de "Lay Away"; corroboración en ese departamento que la mercancía no era de allí y de que Santos no había estado en ese sitio por lo que razonablemente indujeron a los referidos empleados a actuar. Los mecanismos puestos en vigor por K-MART no son inherentemente peligrosos ni atentan contra la integridad personal de los parroquianos que realizan sus compras en ese tienda. El solicitar los recibos de lo adquirido y detener y cuestionar a quiénes no los producen, son mecanismos razonables que un dueño de un establecimiento comercial puede utilizar para asegurar su propiedad. La duración de la intervención fue mínima.
No estamos ante una intervención arbitraria, caprichosa y sin fundamentos en la que se hubiere puesto en entredicho la integridad de Santos. Por el contrario ante los hechos particulares de este caso, tomando los actos y circunstancias mencionadas anteriormente, y el grado y duración de la detención, entendemos que no procede la revocación de la sentencia del Tribunal de Primera Instancia por entender que los funcionarios de seguridad de K-MART actuaron de manera razonable.
*918 Por otro lado, es doctrina fielmente establecida en nuestra jurisdicción que toda revisión se da contra la sentencia y no contra sus fundamentos. Es por eso que un tribunal apelativo puede confirmar una sentencia que, aunque incorrecta en sus fundamentos, esté correcta en el resultado, aunque por fundamentos distintos a los invocados por el tribunal sentenciador. Pagán Navedo v. Rivera Sierra, _ D.P.R. _ (1997), 97 J.T.S. 76.
La Regla 50 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 50, sobre errores no perjudiciales, dispone en su parte pertinente, que ningún error o defecto o acto realizado u omitido por el tribunal, dará lugar a que se deje sin efecto, modifique o se altere una sentencia a menos que tal acción resulte incompatible con la justicia o afecte derechos sustanciales de las partes. Alicea v. Valle Bello, 111 D.P.R. 847 (1982). "La justicia se administra por los hombres y en toda actuación humana siempre hay riesgo de error". Cuevas Segarra, José, Práctica Procesal Puertorriqueña, Procedimiento Civil, Publicaciones J.T.S., pág. 274.
El foro de instancia, luego de resolver correctamente el caso a base del criterio de razonabilidad, mencionó que los actos de la menor eran responsabilidad absoluta de Santos y aplicó la doctrina de "culpa in vigilando" del art. 1803, supra. Santos le imputa error a dicho foro al haber aplicado el referido artículo a los hechos del caso de autos, por cuanto ella no era madre biológica, adoptiva o tutora de la menor bajo su cuidado, ni en ningún momento el tribunal recibió prueba en ese sentido. Un examen del expediente nos indica que ha sido Santos la que desde el principio estuvo estableciendo el vínculo entre ella y su hija de crianza; desde la primera de sus alegaciones le expresó al tribunal que tenía bajo su custodia a la menor. Pero de todos modos, aunque no fuese de aplicación el artículo 1803, supra, por no ser Santos, madre o tutora de la menor, ese hecho no es uno perjudicial que amerite alterar o modificar la sentencia en forma alguna, ya que el resultado, de acuerdo a la pmeba creída por el foro de instancia y la doctrina vigente, es cónsono con su sentencia.
Por otro lado, aun cuando fuera cierto lo alegado por Santos respecto a que fue la menor la que extrajo fuera de la tienda el carrito de compra con la mercancía, aún así la intervención continúa siendo una razonable. Por último, los actos de la menor son responsabilidad exclusiva de Santos, quien en ese momento tenía bajo su custodia a ésta.
Por los fundamentos expuestos confirmamos la sentencia del Tribunal de Primera Instancia, Sala Superior de Guayama, de 24 de septiembre de 1996, que declaró No Ha Lugar la demanda presentada por Luz M. Santos Febus.
Lo pronunció el tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General