Feliciano Acevedo, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
Mediante el presente recurso la parte apelante, Tiendas Pitusa (Pitusa) y su aseguradora, American International Insurance Company of Puerto Rico, solicita la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 14 de octubre de 1996. La misma declara con lugar la demanda en daños y perjuicios incoada contra dicha parte por la hoy parte apelada, señora Wanda Ivelisse Ortiz Torres.
En su dictamen el Tribunal concluye que no existía base o conducta sospechosa suficiente para que un guardia de seguridad de Pitusa detuviera a Ortiz como parte de un alegado incidente de “shoplifting”; y condena a dicha empresa y a su aseguradora a indemnizar a ésta con la cantidad de $15,000. Asimismo, les impone el pago de $1,500. en concepto de honorarios de abogado a favor de Ortiz.
Según determinó probado el Tribunal, el 6 de agosto de 1993 a eso de las 10:00 a.m. Ortiz entró a la Tienda Pitusa, localizada en la Calle Unión en Ponce, para comprar bolígrafos. Al pasar por el área del sistema de seguridad denominado “Checkpoint”, diseñado para evitar el hurto de mercancía, el mismo sonó brevemente, por lo que ella se detuvo. Le extrañó que dicho sistema hubiese sonado, pero al ver que ningún empleado se le acercó, continuó su camino hacia el interior de la tienda. Una vez llegó al área de efectos escolares, tomó los bolígrafos y se dirigió a la caja, donde pagó $1.49 por éstos. La cajera los echó en una bolsa plástica y le dio a ésta el recibo.
Ortiz salió de la tienda y el sistema sonó otra vez. Le estuvo raro pero siguió, pues entendía que el mismo estaba defectuoso. Casi cmzando la calle una persona la agarró por el brazo, la detuvo y le dijo que tenía que acompañarle a la oficina. Ortiz le dijo que no tenía que ir a la Oficina porque no había robado nada.
El empleado que la detuvo resultó ser Gilberto Banuchi Morales, Jefe de Seguridad, quien le explicó que tenía que registrarla puesto que la alarma había sonado. Ortiz le solicitó que la registrara allí mismo delante del público, pero Banuchi le dijo que tenía que pasar a la oficina.
Esta situación provocó que la demandante llorara por la humillación, pero decidió acompañarlo hasta la oficina. Al llegar allí, Banuchi tomó la cartera. Procedió a sacar todos los Artículos de la misma y les pasó el detector portátil por encima.
*1042 Al pasar el detector por la cartera el sistema sonó, por lo que Banuchi le dijo a Ortiz que lo que hacía sonar el mismo era la cartera y le pidió que se tranquilizara, que eso no era nada. Ortiz salió de la tienda llorando y sumamente avergonzada. Llegó nerviosa y llorando a Metro College, donde estudiaba, y le contó a su maestra Zulma Torres lo que había pasado. Esta le recomendó que fuera a la Policía.
Ortiz fue al Cuartel de la Policía Municipal en la calle Molina, con su amiga Doris Cortés, pero le dijeron que no podían hacer nada. Regresó al salón de clases y la profesora Torres le dijo que fuera a otro cuartel. Acudió, entonces, al Cuartel Estatal, donde también le indicaron que no podían atender la querella.
Luego de estos hechos, Ortiz demandó a Pitusa y a su aseguradora por las angustias mentales sufridas. Durante la vista en sus méritos, ésta reconoció que el incidente duró unos trece minutos y que luego del mismo ella no recibió atención médica alguna, ni requirió tratamiento siquiátrico, ni sicológico. Asimismo, aceptó que no tenía condición alguna que le impidiera continuar su vida normalmente.
No obstante, el Tribunal concluyó que Banuchi había incurrido en una detención ilegal e irrazonable puesto que Ortiz no había observado conducta sospechosa ni delictiva que justificara la misma. De ésta manera requirió de dicha empresa el pago de $15,000. como indemnización por angustias mentales y de $1,500. por concepto de honorarios de abogado.
Luego de varios incidentes procesales, Ortiz acude ante nos y señala que erró el Tribunal de Primera Instancia al concluir, conforme a la prueba desfilada, que procedía una acción en daños por detención ilegal; al brindarle credibilidad al testimonio de Ortiz, aun cuando el mismo fue impugnado; al imponerle a dicha parte apelante el pago como indemnización de una cantidad excesiva y al condenarle al pago de honorarios de abogado.
Examinadas las comparecencias de las partes, la exposición narrativa de la prueba oral, aprobada por el Tribunal de Primera Instancia, y los demás documentos que obran en el expediente, a la luz del derecho aplicable, resolvemos revocar la sentencia en controversia.
II
El principio general de responsabilidad civil extracontractual en el caso de actuaciones de empleados de establecimientos comerciales dispone que el dueño del establecimiento comercial responde civilmente si, mediando culpa o negligencia, alguno de sus empleados le causa daño a un tercero en el ejercicio de sus funciones. Artículos 1802 y 1803 del Código Civil de Puerto Rico; 31 L.P.R.A. secs. 5141 y 5142 respectivamente.
En los casos de detención ilegal uno de los elementos esenciales de la acción es que la restricción de libertad del perjudicado haya sido el resultado de los actos del demandado aconsejando, induciendo, instigando o solicitando la iniciación de un procedimiento que culmine con la privación de un procedimiento de dicha libertad. García Calderón v. Galiñanes Hermanos, 83 D.P.R. 318, 319-320 (1961). No es necesario que medie violencia, ni que se hayan iniciado procedimientos judiciales que culminen en un arresto, ni se requiere que la persona perjudicada sea encarcelada, ya que es suficiente que ocurra cualquier forma de detención o restricción efectiva de la libertad del reclamante, sin su consentimiento y por un período apreciable de tiempo. García Calderón v. Galiñanes Hermanos, Id., pág. 319, n. 1.
Se reconocen como elementos constitutivos de la causa de acción por detención ilegal:

“1. la intención de producir detención ilegal o certeza sustancial de que el acto ejecutado volitivamente 
*1043
producirá ésta.

2. el acto positivo o afirmativo en la dirección de producir ilegalmente la detención involuntaria del perjudicado.

3. que se produzca ilegalmente la detención o la confinación total.

4. que la detención sea involuntaria.

5. el perjudicado tiene que estar consciente de su detención.

6. que exista relación causal, suficiente en derecho, entre el acto del demandado y la detención o confinación del demandante. ” H. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da. Ed., San Juan, Publicaciones J.T.S., 1986, a la pág. 91: Parrilla Báez v. Airport Catering, _ D.P.R. _ (1993), 93 J.T.S. 66, a la pág. 10,666.
La razonabilidad de las actuaciones de una persona particular que causa o efectúa la detención de un ciudadano que no ha cometido un delito se mide, tomando en consideración: la persona dél demandado, su edad, la preparación intelectual, condiciones morales y sus experiencias previas; la persona del detenido, incluso su edad, apariencia y comportamiento; conocimiento que en la fecha de los hechos tuviera el demandado de la persona del detenido y aquella que con él se relacionaban; la conducta sospechosa, incluso la gravedad del delito que ella pudiera implicar, el lugar, la ocasión y la frecuencia de dicha conducta. Parrilla Báez v. Airport Catering, _ D.P.R. _ (1993), 93 J.T.S. 66, a la pág. 10,666.
Por otro lado, en los casos de propietarios de establecimientos comerciales que ponen en vigor medidas de seguridad encaminadas a preservar su propiedad se ha establecido que siempre y cuando se tomen precauciones y se salvaguarde la integridad personal de los seres humanos, el propietario de un bien puede utilizar mecanismos, instrumentos y estructuras con el propósito legítimo de cerrar su propiedad y evitar que personas inescrupulosas le hurten impunemente. Sociedad de Gananciales v. González Padín Co., Inc., 117 D.P.R. 94, 103-104 (1986). Como parte de dichos mecanismos figuran aquellos sistemas electrónicos diseñados para prevenir y evitar el hurto de mercancía de los establecimientos comerciales, siendo responsabilidad primaria de sus dueños observar por el adecuado y apropiado manejo de dichos mecanismos. Id., pág. 108.
III
En el caso que nos ocupa es claro que la instalación y utilización por Tiendas Pitusa - el día de los hechos - del sistema electrónico “Checkpoint”, con el fin de evitar el hurto indiscriminado de su mercancía, no chocó en momento alguno con ninguno de los principios pertinentes y aplicables de nuestro ordenamiento jurídico.
En contraposición a lo sucedido en Soc. de Gananciales v. González Padín, supra, donde el referido establecimiento comercial resultó responsable del daño ocasionado a una cliente, luego de que una empleada faltara negligentemente a su obligación de desprender de un artículo comprado por ésta una etiqueta plástica de inventario, que activara el sistema de seguridad una vez la cliente salió de la tienda y que provocara que el personal de seguridad la detuviera y le requiriera que regresara a la tienda; en la presente situación no fue sino la propia cartera de la demandada lo que activó el sistema de seguridad y la intervención del guardia Banuchi.
Sobre este punto en particular se desprende del propio testimonio de Ortiz, que luego de salir ella de la tienda, ya próxima a cruzar la calle, Banuchi se le acercó, la tomó por un brazo, se identificó como empleado de seguridad de Pitusa y le requirió que lo acompañara a la oficina. 
*1044 En cumplimiento de su deber, y ante los reclamos que le hiciera Ortiz de que no se había ella robado nada y de que la registrara allí mismo en la calle, el empleado le explicó sobre la necesidad de registrarla por razón de que el sistema de alarma había sonado, y le requirió una vez más que le acompañara a la oficina. Véase que Ortiz accedió voluntariamente y que una vez llegaron a la privacidad de la oficina, Banuchi le pidió, no le tomó como determinó erróneamente el Tribunal , la cartera y procedió entonces a registrar cada uno de los artículos. Una vez se detectó que lo que sonaba era la cartera, el empleado le dijo que se calmara, que no era nada.
Cabe destacar que dicho incidente no se extendió por un período de tiempo irrazonable, ni fue presenciado necesariamente por muchas personas. A preguntas de la defensa durante su contrainterrogatorio, Ortiz reconoció que aunque había personas presentes, la intervención en la acera apenas había tomado de “dos a tres minutos” y que el registro en la oficina, donde se encontraba sola con Banuchi, se limitó a “alrededor de 10 minutos”. 
Tampoco puede decirse que Banuchi, quien al momento de los hechos contaba con 14 años de experiencia como guardia de seguridad de Pitusa, actuó con irrazonable desprecio de los derechos y sensibilidades de la demandante-apelada o que intentó hacerle daño. Según ella misma admitió, tras el incidente no recibió atención médica, ni tratamiento síquiátrico o sicológico alguno .
Lo cierto es que si bien pudo haber producido este tipo de incidente algún grado de malestar en la persona de Ortiz, no quiere ello necesariamente decir que se tratara de una intervención arbitraria, caprichosa y sin fundamentos en la que se hubiera puesto en entredicho la integridad de ésta. A nuestro entender la intervención de Banuchi demostró ser una mínima y razonable, conforme a las circunstancias que estuvieron presentes en dicho momento.
Como punto de comparación véase lo resuelto por este foro apelativo en Sierra Maya v. Walmart, sentencia confirmatoria de 29 de febrero de 1996, Circuito Regional de Carolina, Núm. KLAN-95-00251, (Rivera de Martínez, Juez Ponente) certiorari denegado por el Tribunal Supremo el 24 de mayo de 1996. En Sierra Maya, supra, los hechos son absolutamente distinguibles, veamos; luego de pagar el importe de los objetos comprados en la tienda, el demandante y su esposa se dirigieron hacia la salida y al momento de pasar por el sistema “Sensormatic” el mismo se activó. En ese instante la señora María Rosario, empleada a cargo de recibir y despedir a los clientes, se dirigió hacia Sierra, lo agarró por un brazo, y sin mediar explicación alguna, le pidió que lo acompañara a un mostrador ubicado en un área abierta. Frente a la vista del público, procedió a revisar los Artículos contra el recibo de compra y a desactivar el Artículo que no fue desactivado en la caja registradora. Estos se sintieron abochornados y humillados pues las personas que estaban en la tienda los miraban fijamente y hacían comentarios desagradables.
Al estar todo en orden, Sierra y su esposa le pidieron una explicación de lo sucedido, sin obtener una explicación por parte de ésta. Incluso se negó a darles su nombre completo. Los demandantes salieron de la tienda, pero decidieron entrar nuevamente a hablar con el supervisor de la empleada, volviendo a activarse el sistema sin que ningún empleado hiciera algo por desactivar la mercancía. Dicha situación se repitió cuando salieron y regresaron para querellarse ante una persona de más alto rango en la tienda.
En dicho caso el Tribunal de Primera Instancia concluyó razonablemente que la omisión de desactivar efectiva y correctamente la etiqueta magnética fue la condición de y/o causa sin la cual no se hubiera producido el resultado negligente que culminó en la restricción ilegal de la libertad del demandante, exponiendo innecesariamente a éste, en un sitio público y a la vista de todos los empleados y clientes, al bochorno, humillación, desprecio y maltrato, produciendo en éstos sufrimientos y angustias mentales.
*1045 Al comparar una y otra situación es claro que la intervención de Banuchi en el presente caso fue una ciertamente razonable, enmarcada en su deber de velar por la protección de la propiedad del establecimiento comercial para el cual trabajaba en dicho momento.
Siendo esto así resulta innecesario discutir los demás señalamientos levantados por dicha parte. Por los fundamentos antes expuestos, se revoca en todas sus partes la sentencia dictada por el Tribunal de Primera Instancia, Sala de San Juan, el 14 de octubre de 1996.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 67
1. Véase a estos efectos la exposición narrativa de la prueba aprobada por el Tribunal de Primera Instancia el 26 de junio de 1998, en su página 2.
2. Obsérvese que en su determinación de hechos número 11 el Tribunal sentenció: “Al llegar a la oficina la demandante, el señor Banuchi Morales le tomó la cartera y procedió a sacar los artículos. ” No obstante, surge de la exposición narrativa aprobada por el Tribunal lo siguiente: “Una vez dentro de la tienda (Ortiz) le mostró al empleado de seguridad la bolsita con los bolígrafos que había comprado. En la oficina, el empleado de seguridad le pidió la cartera para registrarla”.
3. No entendemos porqué Ortiz quería que el registro se hiciera frente al público.
4. Entre sus credenciales figura el haberse desempeñado como guardia de seguridad en el “Auxiliary Police” en Nueva York y en. el Fuerte Alien en Puerto Rico. Asimismo, en 1985 fue reconocido como el guardia de seguridad más distinguido de Ponce. Página 6 de la Exposición Narrativa de la prueba.
5. Concluimos que la cuantía de $15,000. Por los alegados daños, por una inconveniencia de escasmente 12-13 minutos, es una suma exageradamente alta. Urrutia v. A.A.A., 103 D.P.R. 643, 647-648 (1975).