*1148 TEXTO COMPLETO DE LA SENTENCIA
En el presente recurso de apelación, Carlos Manuel Medina Feliz (en adelante Medina Feliz), Elsa Medina y Emotrana Feliz solicitan la revisión y revocación de una sentencia sumaria dictada el 12 de septiembre de 2001, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante la misma, el foro apelado desestimó la demanda en daños y perjuicios por arresto ilegal presentada por ellos, por existir ausencia de causalidad adecuada entre la alegada acción u omisión negligente y el daño sufrido.
I
Los hechos que dieron lugar a la acción en este caso y que no están en controversia son los siguientes:
El 24 de febrero de 1998, Carlos Manuel Medina Feliz llegó al aeropuerto Luis Muñiz Marín procedente de la República Dominicana. Al llegar al área de verificación de pasaporte fue detenido por agentes del Servicio de Inmigración y Naturalización de los Estados Unidos (en adelante SIN). Luego de la correspondiente verificación de su pasaporte, fue pasado a una sala donde se le indicó que existía una orden de arresto y extradición del Estado de Massachusetts contra un prófugo de nombre Milton Medina. El apelante Medina Feliz indicó a los agentes no ser la persona requerida. Luego de permitirle llamar a su señora madre, doña Emotrana Feliz, para que se hiciera cargo de su hijo menor de edad, fue pasado a otra oficina donde le tomaron fotos y huellas dactilares. Estas fueron enviadas por fax al Laboratorio de Huellas Dactilares del Negociado Federal de Investigaciones (en adelante FBI) en el Estado de Virginia.
Al día siguiente, llegó el informe del FBI que certificó que las huellas tomadas en Puerto Rico correspondían a Carlos M. Medina. Una vez completado el procedimiento ante el SIN y respondiendo a una llamada de dichos funcionarios, se personaron al aeropuerto los agentes de la División de Extradiciones de la Policía de Puerto Rico, Sargento Roberto Miranda Feliciano, Mario Reyes Mulero y Richard Carreras Gutiérrez. Allí, los agentes de la Policía procedieron a efectuar el arresto del apelante. Los agentes federales del SIN le entregaron los documentos relacionados con la intervención, junto al informe de las huellas dactilares, los que fueron alegadamente revisados por los agentes estatales. Una vez el apelante fue puesto bajo arresto, fue conducido ante un magistrado para dar inicio al procedimiento de su extradición.
En todo momento, el apelante alega que insistió en que él no era la persona requerida en el Estado de Massachusetts. Hizo tales alegaciones en innumerables ocasiones durante su arresto y transportación hacia el Tribunal de Primera Instancia. Inclusive, llegó a solicitar que se efectuara una comparación de sus huellas dactilares para comprobar lo alegado por él. Llevado ante la presencia de un magistrado para la determinación de causa probable para su detención, se le fijó una fianza de $100,000.00, la cual no pudo prestar siendo ingresado a prisión.
Seguido el trámite del caso, en la vista de extradición, la magistrada que presidía los procedimientos, ante la solicitud del apelante, ordenó que se hiciera un estudio comparativo de las huellas del apelante con las de la persona requerida por el Estado de Massachusetts. El resultado de dicha comparación reveló que el apelante no era Milton Medina; o sea, la persona contra la cual existía la orden de arresto y extradición. En consecuencia, Medina Feliz fue puesto en libertad, luego de cumplir dieciocho (18) días de cárcel.
El 5 de diciembre de 1998, la parte apelante presentó una demanda en la cual solicitó indemnización por los daños y perjuicios por el arresto y encarcelamiento ilegal de que fue víctima. Imputó negligencia a los agentes de la Policía de Puerto Rico al no realizar una investigación más al fondo del caso. Sus alegaciones se circunscriben a establecer que no existía causa probable para pensar que Medina Feliz fuese la persona requerida en el Estado de Massachusetts.
Seguido el procedimiento ante el foro apelado, la parte apelante presentó una moción de sentencia sumaria. *1149 Fundamentó la misma en que de los documentos acompañados con la moción y demás documentos obrantes en autos, se desprendía que no existía controversia real sustancial en cuanto a ningún hecho material. Alegó que como cuestión de derecho, debía dictarse sentencia parcial a su favor, declarando que los apelados fueron negligentes al arrestarlo e ingresarlo en prisión por un período de dieciocho (18) días. Presentada la correspondiente oposición por el Estado Libre Asociado (en adelante E.L.A.), éste solicitó se dictara sentencia sumaria a su favor. Adujo que no existía prueba de negligencia por su parte y que las actuaciones de los agentes federales no eran atribuibles a los agentes estatales.
El 12 de septiembre de 2001, el foro apelado dictó sentencia. Mediante la misma, determinó que existía ausencia total de relación causal entre las actuaciones de los agentes del orden público y el daño reclamado por el apelante, su esposa y madre. Adujo que el daño reclamado fue ocasionado por la negligencia única y exclusiva de los agentes federales a cargo del caso, por lo que desestimó la demanda instada.
A base de las alegaciones de las partes, los términos de la sentencia apelada y la totalidad de los documentos obrantes en autos, debemos determinar si erró el foro apelado al dictar sentencia sumaria.
II
La sentencia sumaria persigue el propósito de obtener un remedio rápido y eficaz por vía de sentencia, cuando la parte que la promueve puede acreditar ante el tribunal que no existe una controversia genuina con relación a los hechos materiales del litigio. Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987).
Si el pleito sólo presenta una cuestión de derecho, está en orden disponer del asunto mediante sentencia sumaria de conformidad con la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.36; Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991). A los fines de considerar una moción de sentencia sumaria, hay que presumir ciertos todos los hechos no controvertidos que se hacen constar en los documentos y declaraciones juradas que se acompañan con la moción. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986).
En el análisis de determinar la procedencia, el juzgador habrá de discernir cuidadosamente al respecto, pues, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido procedimiento de ley. Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613 (1990). Es por esa razón que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho. Figueroa v. Hernández Torres, 137 D.P.R. 420 (1994); Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991).
En forma consecuente con el cuadro doctrinal antes expuesto, observamos que el Tribunal Supremo expresó, en Corp. Presiding Bishop, supra, a las págs. 722-723, que al considerar la procedencia de una sentencia sumaria, el tribunal interpelado debe analizar todos los documentos que acompañen ambas mociones, así como todos, los que obran en el expediente. Padín v. Rossi, 100 D.P.R. 259 (1971). No deberá dictar sentencia sumaria cuando existen hechos controvertidos, cuando haya alegaciones afirmativas en la demanda que no han sido refutadas o cuando de los propios documentos que se acompañan con la moción surge una controversia real sobre algún hecho material, circunstancias que apuntan a que, como cuestión de derecho, no procede dictar sentencia sumariamente. Corp. Presiding Bishop CJC of LDS v. Purcell, supra.
Resulta, pues, clara la norma que la sentencia sumaria sólo procede cuando el tribunal tiene ante sí la verdad sobre todos los hechos pertinentes. Por lo que en tales casos, por no existir una verdadera controversia de hechos entre las partes, la celebración de un juicio en su fondo se hace innecesario. Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983); Padín v. Rossi, supra.
No es aconsejable utilizar el mecanismo procesal de la sentencia sumaria en casos en los cuales hay elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial. *1150 Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994). Lo anterior apunta a que al enfrentar dudas en cuanto a la existencia de una controversia real, el tribunal debe resolver en contra de la parte que solicita la sentencia sumaria y a favor de un juicio vivo. Roth v. Lugo, 87 D.P.R. 386 (1963).
III
Por otro lado, la ley que regula las acciones contra el Estado, Ley Núm. 140 de 29 de junio de 1955, según enmendada, especifica en su artículo 6(d) que no autoriza una demanda por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado por arresto o excarcelación ilegal, persecución maliciosa, calumnia o libelo. 32 L.P.R.A. sec. 3081(d). Este artículo se refiere más bien a actuaciones intencionales, y no impide la presentación de demandas cuando existe una causa de acción contra los funcionarios basado en negligencia. Véanse, Leyva et al. v. Aristud et al., 132 D.P.R. 489 (1993); Galarza Soto v. E.L.A., 109 D.P.R. 179 (1979); Alberio Quiñones v. E.L.A, 90 D.P.R. 812 (1964).
En el normativo caso Alberio Quiñones v. E.L.A., supra, el Tribunal Supremo distinguió entre actos torticeros delictuales cometidos por funcionarios del E.L.A. contra los que el Estado conserva inmunidad y de otra parte los actos descuidados y negligentes que conceden una causa de acción contra el E.L.A. El alto foro resolvió que cuando se trata de daños causados por negligencia, el E.L.A. responde como cualquier persona particular. Véase, también, Montes v. Fondo de Seguro del Estado, 87 D.P.R. 199 (1963).
No puede desestimarse una demanda por arresto ilegal contra el E.L.A., sin sustanciarse la misma en la prueba para determinar sí dicho arresto ilegal se efectuó por culpa o negligencia, en cuyo caso la causa de acción no está excluida por la ley que regula las acciones contra el Estado. Alberio Quiñones v. E.L.A., supra.
En particular, el Tribunal también ha resuelto que la Ley de Reclamaciones y Demandas contra el Estado no impide la presentación de demandas basadas en la omisión o negligencia de los agentes o empleados de no realizar una investigación adecuada antes de someter a un ciudadano a un procedimiento. Véanse, Romero Arroyo v. E.L.A., 127 D.P.R. 724 (1991).
La responsabilidad por los daños causados por un encarcelamiento ilegal recae no sólo sobre las personas que perpetúan el confinamiento, sino también sobre quienes lo ordenan o instigan, aun cuando no participen activamente en el acto físico de la detención. Dobbins v. Hato Rey Psychiatric Hospital, 87 D.P.R. 30 (1962).
La procedencia de una acción en daños por detención ilegal va a depender de criterios de razonabilidad. Hay que hacer un balance adecuado entre la obligación que toda persona tiene de cooperar en la lucha contra el crimen y el derecho que toda persona tiene a no ser privado ilegalmente de su libertad. Ayala v. San Juan Racing Corp., 112 D.P.R. 804 (1982).
La razonabilidad de las actuaciones de la persona que es demandada civilmente en daños por alegada detención ilegal y su responsabilidad por ello, deben medirse tomando en consideración los siguientes factores: (1) la persona del demandado, su edad, preparación intelectual, condiciones morales, y sus experiencias previas; (2) la persona del detenido, incluyendo su edad, apariencia y comportamiento; (3) conocimiento que en la fecha de los hechos tenía el demandado de la persona del detenido y aquéllas que con él se relacionaban; y (4) la conducta sospechosa, incluyendo la gravedad del delito que ella pudiera implicar, el lugar, la ocasión, y la frecuencia de dicha conducta. Ayala v. San Juan Racing Corp., supra.
Nuestro ordenamiento reconoce diversas causas de acción fundadas en el rtículo 1802 de Código Civil, 31 L. P.R.A. see. 5141, relacionadas a la intervención de agentes del orden público con una persona. Se ha reconocido como elementos de la causa de acción por detención ilegal los siguientes: (a) la intención de efectuar una restricción a la libertad de una persona; (b) el que haya un acto positivo o afirmativo encaminado a producir la restricción de la libertad del perjudicado; (c) que ésta sea involuntaria; (d) que el perjudicado sea consciente de *1151 que se le ha restringido su libertad; y (e) que exista una relación causal adecuada entre el acto de la restricción de la libertad y el daño que reclama el demandante. Parrilla v. Ranger American of P.R., 133 D.P.R. 243 (1993); Brau del Toro, Herminio, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Vol. I, Cap. IV, 2da. ed., Publicaciones J.T.S., San Juan, P.R., 1986, Sec. 4.05.
Cuando la detención se lleva a cabo por un oficial del orden público, quien de ordinario tiene o pretende tener autoridad para arrestar a una persona, la misma se cataloga como un arresto ilegal. Por el contrario, cuando la detención se realiza por cualquier persona privada motivada por su iniciativa propia sin tener ninguna autoridad legal para detener a otra, se conoce como detención ilegal. Véase, J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability & Litigation, Vol. 3, Rev. Ed., Callaghan & Company, Deerfield, I.L., 1988, pág. 503 (distinguiendo entre el arresto y una detención ilegal).
Cuando se trata de un funcionario o agente de orden público cuyas actuaciones no están basadas en autoridad legal o sea en un acto ultra vires, se trata entonces de un procedimiento nulo. Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, The American Law of Torts, Vol. 7, Lawyer's Cooperative Publishing Co., Rochester, N.Y., 1990, pág. 944 explican:

"...Thus, where the process on which an arrest is made is regular and legal inform and issued by a court of competent authority, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution.

But a suit for false imprisonment is the proper action where the aggrieved party is arrested without legal authority, as, for example, where he is arrestedpersuant to a process that is void.... ”.

Véase además, Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, The Law of Torts, Vol. 1, 2nd ed., Little, Brown & Company, Boston, M.A., 1986, pág. 297.
IV
Consideramos los hechos de este caso a la luz de las anteriores disposiciones jurisprudenciales. A pesar de los esfuerzos que ha realizado el E.L.A. en este caso para desvincular la actuación de los agentes miembros de la Policía de Puerto Rico, de las actuaciones de los agentes de federales del SIN, es inescapable la relación íntima que guardan ambos hechos. Las consecuencias de que se querella Medina Feliz tiene su origen en el error de los agentes federales del SIN, los cuales alegadamente interpretaron un estudio comparativo de las huellas dactilares del apelante en forma negligente, actuación reiterada por los agentes estatales al efectuar el arresto y subsiguiente encarcelación. Ese es el punto de partida de la causa de acción del apelante. Véase, Ginés Meléndez v. Autoridad de Acueductos, 86 D.P.R. 518 (1962).
De los documentos obrantes en autos vemos que el informe realizado por el FBI el 24 de febrero de 1998 no apuntaba a Medina Feliz como la persona buscada en el Estado de Massachusetts. Una simple lectura de dicho informe así lo revela. Las huellas dactilares suministradas al laboratorio del FBI en el Estado de Virginia indican que las mismas correspondían al propio Carlos M. Medina, el aquí apelante. En ningún lugar de dicho informe se indica que las huellas dactilares suministradas correspondían a la persona de Milton Medina, la persona requerida en el Estado de Massachusetts. Resulta, pues, evidente, que hubo un error en la identificación de la persona del apelante. Los agentes federales del SIN y los agentes de la Policía de Puerto Rico que intervinieron en el caso equivocadamente interpretaron el informe del FBI y concluyeron que las huellas dactilares del Medina Feliz correspondían a los de Milton Medina. Esto desencadenó una serie de eventos que culminó en la encarcelación sin autoridad legal y sin que existiera causa probable para ello.
Ilustrativo de lo anterior es la declaración jurada tomada al sargento Roberto Miranda Feliciano, uno de los agentes que arrestó a Medina Feliz, quien, durante la investigación administrativa realizada, declaró que al *1152 momento del mencionado arresto los agentes federales del SIN le entregaron los documentos de extradición. Alega que verificaron todos y cada uno de los documentos y que de haber alguna inconsistencia en cuanto a los documentos o de éstos no estar al día, no hubieran tomado custodia del detenido. Ante esta alegación y los reclamos del apelante en el sentido de que él no era Milton Medina, pudo mediar negligencia por parte de los agentes estatales al no verificar la identidad de la persona arrestada, descansando totalmente en la interpretación errónea del informe del FBI realizada por los agentes federales del SIN.
Un análisis de los documentos sometidos en el caso revela que existe controversia de hechos que inciden sobre el aspecto medular del caso, la posible negligencia del Estado y de los agentes que intervinieron con el apelante.
En resumen, ante las circunstancias expuestas, es nuestro criterio que la acción del Tribunal de Primera Instancia desestimando la demanda era improcedente ante los hechos alegados que proponen un encarcelamiento ilegal sin que mediara causa probable, en la cual participaron agentes de la Policía de Puerto Rico. Tal negligencia debe ser establecida por la prueba.
Ha sido enfático nuestro Tribunal Supremo al establecer que sólo deberá dictarse sentencia sumaria en casos claros, en los que el tribunal tenga ante sí la verdad de todos los hechos pertinentes. Consejo Tit. C. Parkside v. MGIC Fin. Corp., supra.
Por ello estimamos que el juzgador no podía entrar a juzgar tales cuestiones de hechos en trámite sumario, por lo que venía obligado a resolver en contra de la parte promovente y a permitir la celebración de un juicio plenario.
Por los fundamentos expuestos, dictaminamos que es procedente revocar la sentencia apelada, se reinstala la causa de acción instada por la parte apelante y se ordena la devolución del caso al foro de instancia para la continuación de los procedimientos en armonía con lo aquí resuelto.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 75
1. El informe enviado por la FBI dispone: “The fingerprints you submitted on the above suject [refiriéndose a Carlos Medina] are identical with: Medina, Carlos M. FBI #90 099 VA7.”
2. Esta declaración jurada fue tomada el 24 de agosto de 1998 como parte de una investigación administrativa relacionada con la posible demanda incoada por el señor Medina Feliz.